## ZION'S CO-OPERATIVE MERCANTILE INSTITUTION *v.* HOLLISTER.

A STATUTE IMPOSING A TAX SHOULD BE CLEAR AND UNAMBIGUOUS, and when by its terms it clearly and without doubt imposes a tax on a particular class of property, it should not, by a forced construction, be held to include other property which is not with reasonable certainty included within its language.

MERCHANDISE ORDERS, TAXATION OF, BY THE UNITED STATES.—Merchandise orders issued by a mercantile association calling for merchandise only, though paid out and used as a circulating medium, do not perform the office of money, and are not "notes" within the meaning of the act of congress which provides that "every association * * * shall pay a tax of ten per centum on the amount of their own notes used for circulation and paid out by them," and are not subject to the tax provided for therein.

APPEAL from the third district court. The opinion states the facts.

*Phillip T. Van Zile, U. S. attorney,* for the appellant.

No printed brief on file.

*Sheeks & Rawlins,* for the respondent.

The substantial question in this case is, whether the instruments on account of their terms, form, and nature are embraced within the statute under the alleged authority of which the

tax in question was assessed.   This statute is section 19 of the act of congress of February 8, 1875, and reads as follows: "That every person, firm, association other than national bank associations, and every corporation, state· bank, or state banking association, shall pay a tax of ten per centum on the amount of their own notes used for circulation and paid out by them:" 18 Stat. 311.

The notes mentioned in this section are subsequently referred to in the same act as "such circulating notes:" Sec. 21.

Instruments to be taxable, however used, under this statute must be such that by their terms and face properly come within the designation of notes, and be legally capable of becoming " circulating notes," in the sense in which these words are employed in this act of congress.

The instruments in question are not notes; but come precisely within the legal definition of "order," which is given by Bouvier in this language: "An informal bill of exchange on paper, which requires one person to pay or deliver to another goods on account of the maker to a third party, is called an order:" 2 Bouv. Law Dict., tit. Order; *Hinnerman* v. *Rosenback*, 39 N. Y. 100.

These instruments may, therefore, be appropriately designated by the term " order."

It is a well-recognized rule of interpretation that when a term (here note) is employed in a statute which has a clear, defined, and well-ascertained legal signification, it will be presumed that it is employed in such legal sense, unless it is otherwise expressly defined in the particular statute in which it is found.   And words in common use are to be given their plain, ordinary, and usual signification.   These rules are well established and illustrated by the following authorities: Sedgwick on Stat. & Const. Law, 221 ; Smith's Com., sec. 535 ; *Clark* v. *Utica*, 18 Barb. 451 ; *United States* v. *Jones*, 3 Wash. 209; *Merchants' Bank* v. *Cook*, 4 Pick. 405 ; S. C., 3 Am. Dec. 267.

The words "note" and "promissory note" are equivalent, and are used indiscriminately; and the legal or technical meaning of the word "note" is the same as that which it has in its ordinary and usual acceptation.   The orders taxed in this case do not come within any definition of the term "note"

as given by any author, judicial or otherwise: 1. They embrace no promise by the party who signs them.   2. They are not payable or redeemable in money, but simply call for the delivery of "merchandise at retail."

In order to come within the statute in question, the instruments must be adapted by their terms and nature to represent and circulate as money—to take its place and usurp its functions.  It would be legally and intrinsically impossible for the instruments in question to represent money or usurp its functions, because not payable in money or measurable by a money standard.  For this reason, it is an essential quality of those instruments, such as notes and bills designed in the commercial law to circulate as money, and represent it, that they be payable in money: 1 Parsons on Notes and Bills, 30.

A careful examination of the legislation of congress in relation to the currency and revenue, *in pari materia* with the act in question, will show that whenever it has been the intention to designate any instrument, or class of instruments, the appropriate and distinctive name by which it is known in the commercial law has been employed for that purpose. The words "notes" and "circulating notes"—of very frequent occurrence—are throughout this legislation employed in the sense of a negotiable promise for the payment of money, the legal title to which may pass from hand to hand by delivery. The words "note," "bill," "check," "certified check," "order," "draft," and the like, are everywhere used distinguishably and according to their respective and peculiar significations.

It is a rule of law that when a word has been employed in legislation upon a certain subject in a given sense, and is again used, it is to be taken in its previous sense unless otherwise expressly defined: *Pitte* v. *Shipley*, 46 Cal. 160; *McNichol* v. *U. S. Mer. Agency*, 14 Cent. L. J. 52.

There are a number of other considerations all leading to the same conclusion, that the instruments or orders taxed in this case are not within the statute in question.

The first provision for a ten-per-cent tax on "circulation" is contained in section 6 of the act of March 3, 1865, and was in these terms: "That every national banking association, state bank, or banking association shall pay a tax of

ten per centum on the amount of the notes of every state bank or state banking association paid out by them after the first day of July, 1866 : " 13 Stat. 484.

The next act on this subject was that of July 13, 1866, in these terms : " Every national banking association, state bank, or state banking association shall pay a tax of ten per cent on the amount of notes of any person, state bank, or state banking association used for circulation and paid out by them after the first day of August, 1866:" 14 Stat. 146.

In this form this legislation remained until the statute in question (February 8, 1875).

During this period the liability to the tax extended only to banks and banking associations, and the subject of the tax was only bank notes, or notes in which banks were accustomed to deal. Speaking with reference to this tax, the United States supreme court say : " The tax under consideration is a tax on bank circulation :" 8 Wall. 546, 547.

The object of congress in this legislation, according to the same court, was " to restrain, by suitable enactments, the circulation as money of any notes not issued under its own authority :" 8 Wall. 549. The mischief aimed at is pointed out in these terms: "At the beginning of the rebellion the circulating medium consisted almost entirely of bank notes issued by numerous independent corporations, variously organized under state legislation, of various degrees of credit and very unequal resources, administered often with great, and not unfrequently with little, skill, prudence, and integrity :" Id. 536.

At least, then, the great part of the mischief at which all this legislation, including the statute in question, was aimed was the circulation of bank notes.

While the statute in question imposes the tax upon other notes as well as bank notes—in other words, upon bank and other notes—the latter must be held to mean notes *ejusdum generis*, of the same kind with bank notes according to the well-known rule of interpretation designated by that Latin phrase: 1 Bouv. Law Dict. 619, tit. Ejusdum Generis ; 1 Abbott's Law Dict. 418 ; 96 U. S. 368 ; 94 Id. 421 ; Sedgwick on Stat. & Const. Law, 360, note.

The measure of the tax under the statute in question is

"ten per centum upon the amount of notes," etc.   The orders taxed in this case represent only a heterogeneous variety of specific articles of merchandise.   The words "two dollars," and the like, standing simply as so many pounds, yards, or gallons, as the case may be.

They represent nothing that is capable of being combined into an "amount," in the sense of the statute, on which a percentage can be computed.

Under the statute in question, the liability of an instrument to taxation depends—1. Upon its terms and face; and 2. If of the requisite form, then also upon the use of it for circulation as money.

If by their terms and face the instruments are not within the class made taxable, extrinsic evidence is not admissible to affect their liability to such taxation: *United States* v. *Isham,* 17 Wall. 504; *United States* v. *Van Auken,* 96 U. S. 366; *Bull* v. *Sullivan,* L. R., 6 Q. B., 209; *Rice* v. *Ragland,* 10 Humph. 545.

The following principle is declared by the United States supreme court to be founded in justice, and sustained by the authorities: "If there is any doubt as to the liability of these instruments to be taxed, the construction of the statute is in favor of their exemption, because a tax can not be imposed without clear and express words for that purpose."   See *United States* v. *Isham,* 17 Wall. 504; also *United States* v. v. *Walls,* 1 Bond, 583, 584; *Adams* v. *Bancroft,* 3 Sumn. 384; *Barnes* v. *Barney,* 3 Blatchf. 202; *Girr* v. *Sudds,* 11 Exch. 191; *Conroy* v. *Warren,* 3 Johns. Cas. 259; S. C., 2 Am. Dec. 156; Cooley on Taxation, 199, 202.

Twiss, J.:

The plaintiff in its complaint alleges that it is and was at the times therein mentioned a corporation organized and existing under the laws of this territory solely for the purpose of carrying on mercantile business; that the defendant at and during the same times was and is the acting collector of internal revenue for the United States.

That in 1876 the plaintiff made certain mercantile orders of the denominations of one dollar, two dollars, and five dollars, which were used in paying its employees who were willing to take their pay in merchandise, and also as a means of con-

venience in exchange for produce, which it was agreed should be paid for in merchandise, and that they were not made, or used, or paid, or circulated for any other purpose whatever; that upon the twenty-fifth day of July, 1878, the United States commissioner of internal revenue set down to and assessed against the plaintiff a special tax of ten per centum, amounting to ten thousand dollars, as a tax upon notes alleged to have been used by plaintiff for circulation, and paid out by it for and during the two months ending on the thirtieth day of November, 1876, and between the thirtieth day of November, 1876, and the first day of June, 1878; that the list containing said assessment was by said commissioner of internal revenue placed in the hands of the defendant, as such collector; that the defendant, on the seventh day of August, 1878, as such collector, demanded of the plaintiff the payment of the aforesaid tax, assessed as aforesaid, and threatened that unless payment of the same was made, he, the defendant, as such collector, would seize upon and sell sufficient of plaintiff's property to pay said tax; that while defendant was so threatening to sell and about to sell the property of the plaintiff, the plaintiff, under protest and with notice then and there given by it to the defendant, that said tax was erroneous and illegal, and that suit by the plaintiff would be commenced against the defendant to recover the same, and to prevent the seizure and sale of plaintiff's property as threatened by the defendant, paid to the defendant the amount of said taxes, the sum of ten thousand dollars.    That on the twenty-fifth day of September, 1879, the plaintiff, in due form of law, made its appeal to the commissioner of internal revenue to have said sum assessed against and paid by the plaintiff refunded.    That said commissioner, on the fourteenth day of October, 1879, decided said appeal against the plaintiff, and refused to refund the same, or any part thereof, excepting five hundred dollars.    That the said assessment, demand for payment, and payments were made upon the said alleged merchandise orders, and upon no others, and for the use and circulation of them as above stated; that by reason thereof there remains due and owing to the plaintiff from the defendant the sum of nine thousand five hundred dollars, with interest thereon.

The defendant in his answer alleges that the orders described in the complaint were printed on good paper; in their general appearance resembled bank notes, and would be taken and considered as such by the masses of the people, or as circulating medium; that in addition to the words and figures given in the complaint as descriptive of said orders, the denomination of each of them appeared ·upon the face thereof, and across ·the same in their places, in large letters and figures. Defendant denies that the plaintiff did not use, make, pay out, or circulate said notes or orders, except for the purpose of paying its employees or as a means of convenience in exchange for produce; and upon information and belief, says that during the months of October and November, 1876, and during the time from November, 1876, until July, 1878, the plaintiff issued its notes or orders to the amount of one hundred and four thousand five hundred dollars, in substantially the form above described, and of such form, material, and appearance as to be readily taken and passed as money and a circulating medium.

The plaintiff paid out and issued said notes or orders to any and all persons who would accept them in payment of any debts owing by the plaintiff for produce, labor, or other commodities or causes, the same as money; also received them in payment of goods or other commodities sold, or for debts due plaintiff, took and received said orders and notes the same as money; and again paid out said notes and orders in the course of trade, the same as other money. That after the issue of said notes or orders by plaintiff, they were used for circulation and as a circulating medium at Salt Lake City as well as in other places in this territory, by a large portion of the people in all their business transactions, the same as money; and by them treated as money, and to a considerable extent said notes and orders, during the years 1876 and 1878 inclusive, did displace as a circulating medium, to the amount of such notes or orders, the lawful currency and money authorized by the government of the United States; and denies there is the sum of nine thousand five hundred dollars, or any part thereof, due or owing to the plaintiff. That the tax or assessment levied and collected of plaintiff were the same as assessed, levied, and collected on account of the issue

and circulation of said notes and orders, and says that in
the matter of said assessment and collection of said taxes,
and in all he did connected therewith, he acted only by vir-
tue of his authority as assessor and collector of internal rev-
enue of the government of the United States, and under the
direction of the proper officer of the United States govern-
ment.

Upon the trial, it was admitted by the defendant that the
sample copies annexed to the complaint were true and correct
copies of all the instruments taxed, as for or on account of
the use of which the assessments and collection of the money
sought to be recovered in this action were made; and that
no part thereof had ever been refunded to the plaintiff;
whereupon the plaintiff rested its case.

The following is a copy of one of the instruments:

" No. 318.   Series A.        SALT LAKE CITY, Oct. 16, 1876.

"Pay David O. Calder or bearer five dollars in merchandise
at retail.

"To H. B. CLAWSON.                        G. H. SNELL."

It was in open court agreed by counsel for the respective
parties that the only questions in dispute were: 1. Whether
the instruments, the terms and characters of which had been
admitted, were liable to the tax assessed against them; 2. If
so, whether they were in fact used for circulation as money
and paid out by plaintiff as money; whereupon the plaintiff
rested its case.   The defendant offered in evidence the return
made by the plaintiff to the defendant as the United States
collector of the district of Utah, and offered to prove: 1. That
these instruments were issued by plaintiff, drawn upon one of
its officers, and that they were used for circulation and paid
out by plaintiff; 2. That they were used for circulation and
paid out by plaintiff as money; 3. That they were used by the
plaintiff and paid out by the plaintiff as money; 4. That by
reason of the circulation and use of these instruments by the
plaintiff they displaced to a large extent the currency of the
United States; to all of which offers the plaintiff objected, and
the objections were sustained by the court.

At the request of the plaintiff, the defendant objecting, the
court instructed the jury to find for the plaintiff in the full

amount claimed by the plaintiff, with interest. To which instruction the defendant at the time excepted. The verdict was in compliance with the instructions. Judgment was entered accordingly. Motion for a new trial was filed and overruled, and appeal taken to this court.

The following is the statutory provision under which the assessment was made: "That every person, firm, association other than national bank associations, and every corporation, state bank, or state banking association, shall pay a tax of 10 per centum on the amount of their own notes used for circulation and paid out by them." Supp. 1 R. S., 1874–1881, p. 133, sec. 19.

The material question of this case is, In what sense did congress use the term "note" in this section?

To determine this question, we are permitted to look at the subject-matter of the statute as well as to the name given by it to the instrument.

A statute imposing a tax should be clear and unambiguous, and when by its terms it clearly and without doubt imposes a tax upon a particular class of property, it should not, by a forced construction, be held to include other property which is not with reasonable certainty included by its language. A citizen about to make investments or to engage in business should be enabled, by the exercise of ordinary judgment and discretion, to know with reasonable certainty what his obligations under existing laws as a tax-payer may be; and the ordinary use and force of the language used—the obvious intention of the legislature—will determine his rights and liabilities as to this matter: Cooley on Taxation, 199–208.

In cases where the language of the statute is so obscure as to cause doubt as to the liability of an instrument to taxation, the construction is in favor of the exemption, because a tax can not be imposed without clear and express words for that purpose: *United States* v. *Isham,* 17 Wall. 504. There are many instruments properly called notes, but in matter of commerce the word "note" means an instrument recognized as a note in the mercantile sense of the word—a promise to pay money, unless the term is qualified.

"Notes used for circulation" are necessarily negotiable and payable in money. They are intended to and do repre-

sent money, and do the work of money in business transactions, and on a day therein named become money: 1 Parsons on Notes and Bills, 42, 45.

A note of this description, made and "paid out" by the plaintiff, with the design and intention that it should be and is put into circulation, and does the work of money as a circulating medium, is clearly within the statute and taxable; but an order to pay D. O. C. or bearer five dollars in merchandise at retail is of another class or description of paper, which does not perform the office or functions of money, and is not a note in the sense in which the word is used in the statute: *United States* v. *Van Auken*, 96 U. S. 366. We are, for these reasons, of the opinion that there was no proof that the respondent issued any notes within the intent and meaning of the statute, and that the court below did not err in excluding the evidence offered by the appellant of the issuing and circulation by the respondent of its orders or promises to deliver merchandise, and the other evidence offered by the defendant at the trial; and that there was no error in the instruction to the jury.

The judgment of the district court is affirmed.

HUNTER, C. J., and EMERSON, J., concurred.