THE PEOPLE OF THE STATE OF NEW YORK ex rel. J. FREDERIC KERNOCHAN and the NEW YORK LIFE INSURANCE AND TRUST COMPANY, as Committee of MARIE MARSHALL, an Incompetent Person, Relators, *v.* JAMES A. WENDELL, as Comptroller of the State of New York, Respondent.

Third Department September 14, 1921.

**Taxation — income tax — expenses incurred by committee of incompetent person during 1916–1918 in resisting litigation of foreign State to recover unpaid taxes not deductible from income for year 1919.**

The expenses paid by a committee of an incompetent person during the years 1916–1918 in resisting a litigation by the State of Virginia to recover unpaid taxes is not deductible from the income of the incompetent person for the year 1919, by virtue of section 360 of the Tax Law, which provides that " all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered," etc., shall be deductible from gross income for the purpose of arriving at the net income.

WOODWARD and KILEY, JJ., dissent, with opinion.

CERTIORARI issued out of the Supreme Court and attested on the 22d day of April, 1921, directed to James A. Wendell, as Comptroller of the State of New York, commanding him to certify and return to the office of the clerk of the county of Albany all and singular his proceedings had in reference to fixing the income tax of Marie Marshall, an incompetent person, for the taxable year of 1919 under article 16 of the Tax Law.

*Henry F. Miller* and *Robert M. Miller,* for the relators.

*Charles D. Newton, Attorney-General [James S. Y. Ivins* of counsel], for the respondent.

COCHRANE, J.:

It is provided by section 357 of the Tax Law (as added by Laws of 1919, chap. 627) that " net income " means the gross income " less the deductions allowed by this article." Any deduction claimed, therefore, must find its justification in the statute. The only statute cited as an authority for the proposed deduction is subdivision 1 of section 360 (as added by

Laws of 1919, chap. 627). But that subdivision clearly relates only to expenses " in carrying on any trade or business." The expense here claimed as a deduction was not so incurred. These relators were not engaged " in carrying on any trade or business " in any just or proper sense. Only by a strained and distorted use of words and an unnatural application of the statute can it be made to apply to the expenditure in question. The income of the incompetent person which the relators as her committee collected was what is sometimes spoken of as unearned income or such as is derived from permanent and fixed investments. If such is not the fact the burden was on the relators to show the actual facts. The expenditure claimed as a deduction was incurred in resisting a litigation by the State of Virginia to recover unpaid taxes and has no relation to any " trade or business." If this incompetent person were competent and personally in receipt of her income without the intervention of the relators as her committee no one would speak or think of her in so doing as carrying on a " trade or business." On the contrary, she would be regarded as a person " retired from business." Furthermore, the words " trade or business " in subdivision 1 of section 360 have the same meaning as the corresponding words in subdivision 1 of section 359 (as added by Laws of 1919, chap. 627) defining " gross income " wherein " interest, rent, dividends, securities " are plainly regarded as on a different basis from " trades " or " businesses." It may be that as a general proposition (certainly not, however, in this case) an expenditure like the one in question would equitably be a proper deduction, but that is an argument which should be addressed to the Legislature and not to the courts. I find no warrant in the statute for the proposed deduction and, therefore, think that the determination should be confirmed.

VAN KIRK, J., concurs; WOODWARD, J., dissents, with an opinion in which KILEY, J., concurs.

JOHN M. KELLOGG, P. J.:

Article 16 of the Tax Law (as added by Laws of 1919, chap. 627), known as the State Income Tax Law, went into effect May 14, 1919, and imposes a tax on the net income of that year.

(See § 351.)   The relators feel aggrieved because in arriving at the net income for that year the sum of $50,892.21, which they paid January 7, 1919, but which by an order of the Supreme Court of this State, December 28, 1918, was required to be paid as attorney fees and expenses for a litigation which had been carried on in the State of Virginia during the years 1916, 1917 and 1918, was not allowed as a deduction from the gross income. Clearly there was not enough income received for the year 1919 prior to the payment to meet the amount. It is evident that it was paid by an accumulation of income from prior years or from the principal. When the amount was fixed by order of the court it became a debt against the estate and was drawing interest and in no way represented an expense or disbursement of the estate chargeable to income for the year 1919. This deduction would be unjust to the State and it is evident that such a result cannot come from an interpretation of the statute unless the language used permits of no other construction.

The provisions of the statute which it is claimed compels such a result when fairly read together exclude such a conclusion. Section 350, subdivision 4, provides: " The words ' taxable year ' mean the calendar year, or the fiscal year ending during such calendar year, upon the basis of which the net income is computed under this article." Section 360 provides the deductions to be made from the gross income to arrive at the net income and includes in subdivision 1 " all the ordinary and necessary expenses *paid or incurred* during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered," etc. The words " paid or incurred " have a meaning fixed by subdivision 6 of section 350 which requires that they " shall be construed according to the method of accounting upon the basis of which the net income is computed, under this article." Section 358 of the Tax Law gives the basis upon which the net income is computed. We quote from subdivision 1: " The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of account-

ing has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Comptroller does clearly reflect the income."

By this provision it was undoubtedly intended that a technical construction of a definition or a particular clause in the statute should not destroy or subvert the real intent of the law and bring about an injustice. Clearly a method of bookkeeping which closed the account at the end of the year and omits the mention of a liability of over $50,000, fixed by order of the court during the year, is not to be commended, and if that liability represented expenditures which should be deducted from the income of 1918 or of previous years, the account does not truly reflect the true condition of the income. The amount fixed by the order was not an expense arising from the conduct of the business for the year 1919 and the payment of the amount was the payment of a debt which should have been paid, but was not paid the previous year.

It is evident that if the Income Tax Law applied alike to the year in which the expense was incurred and the year in which it was paid, it would be of little importance to the taxpayer or the State in which year the expense was deducted, but where there was no tax for the year in which the expense was incurred and it is sought to deduct it from the following year's income, the first year in which the Income Tax Law applied, a different situation presents itself. In the former case in a going business it is immaterial in which year the deduction is made; it is a mere matter of bookkeeping; but in this case the relators seek to avoid the payment of an income tax for the year 1919 when there was a large net income by deducting from it moneys required by an order of the court to be paid in the year 1918, which represented deductions which should be allocated to the income of the years 1916, 1917 and 1918.

In arriving at the net income, therefore, the Comptroller was not bound by the method of bookkeeping or the manner of accounting of the taxpayer, but if in his judgment it does not clearly reflect the income, he is required to compute the income in such a manner that it will reflect the income. It

is clear under these provisions that the Comptroller was justified in determining that there was no arbitrary rule which required him to deduct this indebtedness fixed by the order of the court in the previous years on account of services for the three preceding years from the income of the year 1919. Such an act would not reflect the true income of the year but would distort it. The amount fixed by the order was not a disbursement on account of the income or of the transaction of the business of the estate in the year 1919, and the Comptroller was justified in refusing the credit. The determination should be confirmed, with fifty dollars costs and disbursements.

WOODWARD, J. (dissenting):

The relators, in March, 1920, filed a return for the New York income tax for 1919, which showed a net income of $22,021.72, and paid the tax thereon, amounting to $340.43. This return set forth, among other things, as a deduction, a payment of $50,892.21 made in 1919. This was disallowed by the Comptroller, who made a recomputation, fixing the net income for 1919 at $72,913.93, resulting in a tax of $1,587.41, which, after deducting the previous payment, left a tax of $1,246.98, with interest. Application for a revision was made and denied, and this proceeding was duly instituted.

The relators are the committee of an incompetent. In the course of administration a litigation arose which involved the funds of the incompetent, resulting in leaving charges for counsel fees and other charges to be adjusted. On the 28th day of December, 1918, before the adoption of the State Income Tax Law, the Supreme Court made an order directing the payment of these expenses in the sum of $50,892.21. This order was delivered to the relators, as committee, on the 2d day of January, 1919, and on the 7th day of January, 1919, the payment was made. The transaction has in it no element of fraud. At that time there was no knowledge on the part of any one that the Legislature would adopt an Income Tax Law, and the order made on the twenty-eighth day of December, not being served until the second day of January of the following year, had no operative force as against the estate of the committee until that time.

The relators, as committee, in the discharge of their duty,

made an annual inventory and account of the estate in their hands in January, 1919, having closed their books in the regular course of business on the thirty-first day of December prior. This inventory and account was duly approved in the manner provided by law, and there appears to be no question that the accounts of the committee were regularly kept upon a cash basis. The payment of January 7, 1919, made prior to the taking effect of the Income Tax Law on the 14th day of May, 1919, was charged against the income of the incompetent's estate, and appears in the annual inventory and account for the year 1919. No question arises as to the good faith of the transaction, so far as appears from the record; no reason existed in January, 1919, or at the time of closing the books for the previous year, why the committee should have paid the previously accrued expenses until the order of the court had been served in the orderly administration of the law; but the respondent has refused to allow the deduction from the income of 1919 upon the theory that the charge having been created prior to that time it could not be allowed in a subsequent year.

We look into the statute in vain for any justification for this ruling. The rule is that " ' a tax cannot be imposed without clear and express words for that purpose ' " ( *United States* v. *Isham*, 17 Wall. 496, 504; *Gould* v. *Gould*, 245 U. S. 151, 153; *Crocker* v. *Malley*, 249 id. 223, 233) and here the act provides for a tax " with respect to his entire net income as herein defined " (Tax Law, § 351, as added by Laws of 1919, chap. 627), and the " net income " is declared to mean " the gross income of a taxpayer less the deductions allowed by this article." (Tax Law, § 357, as added by Laws of 1919, chap. 627.) Among the deductions provided are " all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered," etc. (Tax Law, § 360, subd. 1, as added by Laws of 1919, chap. 627), and it can hardly be doubted that the reasonable expenses of carrying on the business of the incompetent were paid during the taxable year of 1919. There is no provision excluding the payment of obligations for " ordinary and necessary expenses " of previous years

from the deductions. If they are incurred in the taxable year they may be paid in that year, but if they are incurred in one year and paid in another, where this is consistent with the system of bookkeeping regularly used by the taxpayer, we find nothing in the statute which stands in the way of their being allowed as deductions. The net income is merely the gross income, less the deductions provided by the statute, and there is, of course, no authority in law for taxing that which the statute says shall be deducted in arriving at the net income. The deductions are in the nature of an exception from the provisions of the statute; it has made no provision for taxing the " ordinary and necessary expenses paid or incurred during the taxable year," though it has by its definitions provided against the deduction of both payments and accruals in the same year. (Tax Law, § 350, subd. 6, as added by Laws of 1919, chap. 627.) This depends upon the system of keeping accounts. For instance, if an " ordinary and necessary expense " is accrued in any given year, and the system of accounting is based on accruals, it is to be included in the deductions for the year in which it accrued, and cannot properly become a part of the deductions of the succeeding year. But when the system of accounting is upon a cash basis the deduction is to be made in the year when the cash is paid, without reference to the time of accrual, and in the present case the system of accounting, as established before the Income Tax Law went into effect, was upon the cash basis and there is no provision of law for collecting a tax upon the incompetent's income in the year prior to the taking effect of the statute, for this is the practical effect of denying a deduction for a previously accrued expenditure in the year in which the payment was actually made. The rule was laid down in the case of *United States* v. *Isham* (17 Wall. 496, 506), in construing the Internal Revenue Act of June 30, 1864 (13 U. S. Stat. at Large, 293, 298, chap. 173, § 158, Schedule B), that if the system or device by which an internal revenue statute was avoided was legal in form it was subject to no legal censure. By way of illustration the court referred to the Stamp Act of 1862 (12 U. S. Stat. at Large, 475, 480, chap. 119, § 94, Schedule B), which imposed a duty of two cents upon a bank check when drawn for an amount not less than

twenty dollars. " A careful individual," say the court, " having the amount of twenty dollars to pay, pays the same by handing to his creditor two checks of ten dollars each. He thus draws checks in payment of his debt to the amount of twenty dollars, and yet pays no stamp duty. This practice and this system he pursues habitually and persistently. While his operations deprive the government of the duties it might reasonably expect to receive, it is not perceived that the practice is open to the charge of fraud. He resorts to devices to avoid the payment of duties, but they are not illegal. He has the legal right to split up his evidences of payment, and thus to avoid the tax." So, in the case now before us, if the relators had deferred the payment for the purpose of avoiding the tax in a given year, so long as their action was legal in form and conformed to their established system of accounting as allowed by the statute, there would be no fraud, and the Comptroller would not be authorized to deny the deduction authorized by the statute in the year in which the payment was actually made. But the relators in the present instance could not have known that they were escaping taxation by deferring the payment of necessary expenses to the 7th day of January, 1919, for up to that time there was no law providing for such taxes. They simply proceeded in the orderly administration of the property of the incompetent. They had no authority to make the payment until the order of the court, dated December 28, 1918, and not served upon them until the second day of January. If they had paid immediately upon presentation of the order they would still have been within the year 1919, and no considerations of equity or duty could have called upon them to have anticipated the service of the order.

The recomputation of the respondent should be set aside and the payment of $340.43 should be accepted as full discharge of the obligations of the relators to the State for the year 1919, with costs.

KILEY, J., concurs.

Determination confirmed, with fifty dollars costs and disbursements.