Appeal of ANNA M. HARKNESS.          Docket No. 146.

The sale by a taxpayer in 1920 of trust certificates in a fund con- sisting of stock and its accumulating dividends, where the taxpayer has no right or control over the trust *res*, at a price in excess of cost, results in tax upon such excess as a profit in 1920 and not as part profit in 1920 and part dividends for earlier years.

Submitted November 18, 1924; decided December 2, 1924.

*Harrison Tweed, Esq.*, for the taxpayer.

*Arthur H. Fast, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before JAMES, STERNHAGEN, and TRAMMELL.

The appeal is from the determination of the Commissioner of a deficiency for the calendar year 1920 in the personal income tax of the taxpayer by reason of her failure to include in her gross income certain amounts which she contends are dividends for earlier years,

The facts are not disputed, but their legal effect upon the taxpayer's liability is sharply controverted.

### FINDINGS OF FACT.

In August, 1913, the taxpayer was a stockholder in the Union Pacific Railroad Co. As such she had the right to and did subscribe for certificates of interest issued by the Central Trust Co., of New York, representing 2,416 shares of stock of the Southern Pacific Co. at a price of $92 a share, making a total subscription price paid by her for her certificates of $222,272 (the figure of $220,272 set forth in the petition and stipulation being obviously in error). She held these certificates in her possession until 1920, actually receiving no income therefrom, and in that year sold them. The amount she received therefor aggregated $346,617.53, which was $124,345.53 more than they had cost her in 1913. In the view we take of the case, these are all the material facts necessary to be stated as the basis of our conclusion. But in order to provide a clear understanding of the issue we shall elaborate our findings.

In 1913 it was finally decreed by the district court of the United States that the Oregon Short Line Railroad Co., all the stock of which was owned by the Union Pacific Railroad Co., should dispose of its ownership of stock in the Southern Pacific Co. Under the plan of the decree a portion of this Southern Pacific stock was transferred to the trust company in trust. The stockholders of the Union Pacific Co. were given the right to subscribe, not for shares of stock of the Southern Pacific Co., for the plan was to separate the ownership of that company from the ownership of the Union Pacific and the Oregon Short Line, but for certificates of interest in the trust *res* consisting of the Southern Pacific stock held by the trust company. For these Southern Pacific shares thus transferred by the Short Line it was to receive the $92 per share subscription price paid by the subscriber to the trust company for the certificates of interest. These certificates carried with them no control by the holder over the shares of the Southern Pacific and no voting rights so long as such holder was a Union Pacific stockholder. Nor did the certificates entitle the holder to the receipt of any periodic distribution of income therefrom so long as the holder continued to own Union Pacific stock. The certificate holder had the right either to sell his certificates or to sell his Union Pacific stock, and in the latter event he had the legal right to exchange his certificates of interest with the trust company and to receive the number of Southern Pacific shares indicated by his certificates plus the accumulated dividends.

The dividends upon the Southern Pacific stock were regularly paid by that company to the trustee as the owner of record of the shares held by it in trust. When received by the trustee they were placed in a special account in its own name. It also kept a separate record of the registered holders of certificates of interest, but these names did not appear on the dividend account. By an interlocking of records it could at any time be ascertained what was the distributive share of accumulated dividends properly payable to any certificate holder upon proper surrender of the certificate. These dividends were accumulated and held by the trustee. Whenever a certificate holder presented his certificate, together with an affidavit that he

was not directly or indirectly the owner of Union Pacific stock, he received from the trust company the shares of Southern Pacific stock to which he was then entitled, together with the amount of dividends accumulated thereon.

The certificates of interest were quoted, bought and sold in the open market, and the price thereof always approximated the market price of Southern Pacific stock plus the accumulated dividends. They did not sell ex-dividend.

The price received by the taxpayer, aggregating $346,617.53, was figured upon the market value of the shares of stock of the Southern Pacific, plus the dividends theretofore declared thereon. She figured that $5,586.96 represented current dividends for 1920 and $101,472 represented accumulated dividends for seven years (1913 to 1919 inclusive) at 6 per cent, or $14,596 per year; and deducting these dividends, aggregating $107,058.96 from the price received, left an amount of $239,558.57 as the sale price of the 2,416 shares of Southern Pacific stock. She treated this in her 1920 income tax return by showing and paying tax upon $17,286.57 as the profit from the sale of securities, being the difference between the original cost of $222,- 272 and the amount of $239,558.57 which she regarded as the selling price; and $5,586.96 as dividends received during the current year on stock. On a rider attached to her return she set forth the facts as to the remaining $101,472 and requested that this amount be regarded and taxed as dividends of $14,596 received in each of the years 1913 to 1919, inclusive.

The Commissioner has determined that the amount of $101,472 was income for the calendar year 1920, and has based his asserted deficiency thereon in the amount of $43,629.52.

### DECISION.

The deficiency of $43,629.52 determined by the Commissioner is approved.

### OPINION.

STERNHAGEN: The statement of the facts has probably already disclosed our opinion. The taxpayer in 1920 sold for $346,617.53 certificates which had cost her $222,272, and thereby in that year realized a profit of $124,345.53 which should be included in her gross income. This of course means that we do not regard the facts as to the accumulation of the dividends by the trustee as affecting the liability of the present taxpayer, notwithstanding their undoubted effect upon the market price generally of the certificates and the sale price of the certificates here in question.

The taxpayer was a beneficiary of the trust which collected the dividends. As such she had an inchoate right and interest in the stock and dividend fund held by the trustee. Her right and interest were much like those of a stockholder in the accretions and surplus earnings of his corporation. *Eisner* v. *Macomber*, 252 U. S. 189. She had absolutely no right or control over the amounts received by the trustee, and could only have acquired such right or control by the performance of a condition precedent—disposing of her Union Pacific stock—and this she did not do. Counsel argues that the dividends should be regarded as received by her when received by the

trustee because the precedent condition was entirely within her own control. In other words, she could have sold her Union Pacific stock whenever she liked and thereupon demanded and received both the stock and the dividends. This is unquestionably true, but in fact she failed to do so; and hence she never acquired any right to receive from the trustee either the stock or the dividends. She never became a stockholder of the Southern Pacific Co. Her only interest was a qualified right in the growing trust fund. It seems to us to be fundamentally unsound to determine income tax liability by what might have taken place rather than by what actually occurred. Even though the practical effect may be the same in either case, the resulting tax liability may be quite different. *United States* v. *Isham*, 17 Wall. 496. In the present case both the practical and the legal effects were different; for it was certainly not the same when she received her total price for the certificates in 1920 as it would have been if she had sold her Union Pacific stock, exchanged her certificates for Southern Pacific stock, received her then accumulated dividends, continued to receive her current dividends directly from the Southern Pacific, and then sold her Southern Pacific stock with no accumulated dividends.

The learned counsel for the taxpayer contends that the dividends were taxable to the trustee when received. This may or may not be so under the statute in effect when each of the dividends was received. The statutes varied, and the terms of each and their application to the facts would require careful consideration. In our view of the case it is not necessary or proper to determine that question in this appeal.

It appears that the Commissioner has treated the $107,058.96 as dividends received by the taxpayer in 1920, and thus the amount is not subjected to normal tax. If this is true it appears to be erroneous because the amount is not a dividend but a profit from sale, and hence subject to both normal and surtaxes. We shall not now determine this as part of our formal decision, but confine our decision to approving the deficiency asserted by the Commissioner. If the additional deficiency of normal tax is asserted by the Commissioner and the taxpayer has ground for appeal upon that issue, we will then consider it upon the issue as then presented.