*1123 OPINION.
Trammell:
The sole- question for consideration is whether the attempt by the taxpayer to deduct a loss of $116,484.30 in his income-tax return for 1921 was a fraud with intent to evade tax. The Commissioner asserts that the transaction upon which the deduction was predicated was a pretended sale, designed to effect an evasion of taxation. The taxpayer admits that the transfer described in paragraph 4 of the findings was made in order that he might deduct a loss for the taxable year. If the transaction was a sale, the taxpayer’s admission expresses a perfectly legal intent, United States v. Isham, 17 Wall. 496; Appeal of Pennsylvania Co. for Insurance, etc., 2 B. T. A. 48; Appeal of Benjamin T. Britt, 2 B. T. A. 53; Appeal of Harold B. Clark, 2 B. T. A. 555. Whether the proper intent existed in the present case remains to be determined from the circumstances surrounding the transaction.
The evidence discloses a tangled web of circumstances from which it is difficult to unravel the threads of truth. From a brief narrative *1124 of what at first appears to be an actual sale of shares of stock, the testimony, in its extended detail, presents confusion and suspicion.
Bockus and the taxpayer testify with positiveness that, on or about December 10, 1921, Bockus called on the taxpayer and told him that he wanted to buy some of the corporation stock; that a few days subsequently there was another conversation about the matter, and that on December 21, 1921, the negotiations were closed by the taxpayer selling to Bockus certificate 95 for 267,780 shares of the stock and taking in payment therefor Bockus’ demand promissory note for $13,389. Both witnesses testified that this transaction was a sale and was intended by both to be a sale. In corroboration it was shown that certificate 95 was surrendered by Bockus and canceled on the books of the corporation; that certificate 696 was issued to Bockus in lieu thereof and retained by him for some four or five months. These, in brief, are the facts upon which the taxpayer relies to support his right to a deduction of a loss and to defeat the deficiency and added penalty.
According to Bockus, his offer to purchase was made on his own behalf and he was not acting as a broker, but as a principal, in making the purchase. Yet we find him charging, and the taxpayer paying in cash, a brokerage commission of $1,267 on a sale which involved Bockus giving a note of somewhat doubtful value in payment for the shares of stock. Bockus testified that this commission was justified by custom, yet, when pressed on cross examination, he admitted that in all his dealings he had never before received a commission for giving a note for stock which he purchased for his own use and benefit. To further aid in making the sale, the taxpayer, in addition to paying for the revenue stamps on the transfer of the shares to Bockus, paid for the stamps on the note given him by Bockus, despite the fact that Bockus was to receive a rather liberal commission on the deal. Apparently the taxpayer was not only desirous of making a sale, but was extremely anxious to facilitate it for the purpose of taking a loss within the year in issue.
Bockus held certificate 696 until the latter part of May, 1922, or approximately two and a half months after the taxpayer was required to file the income-tax return for 1921 in which he had deducted a loss of $116,484.30 on the purported sale. There is no testimony to show that Bockus made any attempt to dispose of it by sale during the period of his possession and thus realize a profit, though he testified that his reason for purchasing the stock was to make a profit on resale. When the taxpayer called on Bockus in the latter part of May, 1922, and inquired as to whether he could pay the note and Bockus requested the taxpayer to repurchase the stock *1125 by giving him back bis note, the taxpayer was peculiarly prompt in acquiescing and obviously generous in paying Bockus a commission to sell back the stock to him in consideration for a note which was apparently worthless. In the sale and repurchase of the stock, the taxpayer paid commissions amounting to $2,534. For these payments he had the stock restored to his possession, but had claimed a deduction in his income-tax return which had saved him from the payment of a tax of $9,216.84. These circumstances are such as to throw strong suspicion upon the bona ftdes of the transaction of December 21,1921.
This suspicion is augmented when we consider the further transactions between the taxpayer and Bockus. In November of 1922, about six months after Bockus had declared himself unable to pay his note of December 21, 1921, and in the face of confession by him of impending bankruptcy proceedings, the taxpayer again discussed another sale of corporation stock to Bockus. Immediately following the filing of the creditors’ petition in involuntary bankruptcy against Bockus, the taxpayer in Honolulu mailed certificates representing 152,736 shares of the corporation stock to San Francisco to be delivered to Bockus upon his executing and delivering a promissory note in the amount of $3,054.72, at the rate of 2 cents per share, in favor of the taxpayer. This note was delivered to the taxpayer’s agent on December 27, 1922, just before the close of the taxable year, and the taxpayer in his income-tax return deducted a loss of $54,984.96 on the purported sale. Again we find Bockus retaining the stock, again we find him unable to pay his note, once more we find the taxpayer willing to repurchase the stock, after the filing of his return by returning Bockus’ promissory note, and again we find that the taxpayer has paid Bockus a commission on each of the so-called sales.
From the testimony of the taxpayer and Bockus we are of the opinion that the transfer of stock to Bockus in December 21, 1921, was not a sale, that it was a mere pretense to permit the taxpayer to claim a loss, and that the return was false and wilfully so made.
Judgment will be entered on 30 days' notice, umder Rule 50.
Miluken did not participate.
Muedock dissents.