## UNITED STATES *v.* ISHAM.

1. The words "memorandum, check," in that part of the schedule of instruments required by the statute of June 30th, 1864 (13 Stat. at Large, p. 298, § 158), to be stamped, which in the printed statute-books are printed with a comma between them, should read, "memorandum-check," with a hyphen instead of a comma.

2. In settling whether an instrument should be stamped or not, regard is to be had to its form, rather than to its operation. Though it may be a device to avoid the revenue acts, and though its operation may have the effect of avoiding them, yet if the device be carried out by means of legal forms, it is subject to no legal censure.

ON certificate of division in opinion between the judges of the Circuit Court for the Eastern District of Michigan; the case being thus:

The act of June 30th, 1864, "to provide internal revenue to support the government," &c.,* requires certain instruments, specified in a schedule which it contains, to be stamped. The schedule is as follows:

BANK-CHECK, draft, or order for the payment of any sum of money whatever, drawn upon any bank, banker, or trust company, or for any sum exceeding $10 drawn upon any other person or persons, companies or corporations, at sight or on demand, . . . . . . . . . . . 2 cents.

Bill of exchange (inland), draft, or order for the payment of any sum of money not exceeding $100, otherwise than at sight or on demand, or *any promissory note* (except bank notes issued for circulation, and checks made and intended to be forthwith presented, and which shall be presented to a bank or banker for payment), or *any memorandum,* check, receipt, or *other written or printed evidence of an amount of money to be paid on demand,* or at a time designated, for a sum not exceeding $100, . . . . . . . . . . . 5 "

And for every additional $100, or fractional part thereof in excess of $100, . . . . . . . . . . . 5 "

This statute being in force, the United States filed, in 1871, a criminal information in the court below against E. B. Isham, for issuing without a stamp and with intent to evade

---

* 13 Stat. at Large, § 158, p. 298, amended by the act of July 13th, 1866; 14 Id. 144.

the provisions of the above-quoted act, a paper in the form
of a draft drawn upon one C. J. Canda. The paper, which
was attached to and made part of each count of the infor-
mation, was in this form:

| | | |
|---|---|---|
| [V.]  **IRON CLIFFS COMPANY.**  [FIVE.] | | |

[1190]                                                   NEGAUNEE, MICH., Jan. 3d, 1870.

Pay to the order of ......,*E B. Isham, Supt.,* ......or *bearer,*

**Five Dollars,**

*Value received, and charge to account of*

To C. J. CANDA, ESQ., New York.                    E. B. ISHAM.

Countersigned:        E. S. GREEN, Clerk.

It appeared from the testimony offered by the govern-
ment, that the Iron Cliffs Company was a corporation of
Michigan; situated at Negaunee, in the State just named,
and engaged in mining iron-ore and in manufacturing pig-
iron. It had an office at Negaunee, where its business was
carried on, and a head office in New York, where its board
of directors met, and its funds were kept. Isham was su-
perintendent of the works at Negaunee, and resided there.
Canda was treasurer of the company, and resided in New
York. The company had been in the practice of issuing
paper like the instrument above set forth, in payment for
labor or other debts due at the mine since January, 1868,
nearly all payments of balances due for labor having been
made since that time and up to 1871, when the information
was filed, in it. The amount issued annually since that time
had been about $100,000. The blanks were sent to Isham
from New York, and signed by him as drawn. The de-
nominations issued were of $1, $2, $3, $5 and $10. When
the Iron Cliffs Company began to issue this paper, there
were hardly any facilities for getting currency into the
country, except taking it through one hundred and twenty
miles of staging, and through a wilderness chiefly; and when
it was issued, it, to some extent, went into circulation, and
answered the purpose of a local currency. It was taken at
a store, in which the company was interested, in payment for

goods; and by all the banks and banking-houses in that region; and sometimes paid out by them on checks. But when in the course of business it came into the hands of a bank or banker, or a merchant, it was generally retained until a considerable amount of it was on hand—say from $1000 to $2000—and then either sent to New York by express for redemption, *or Isham took it up* and gave to the holder a draft on New York for the amount. When Isham took this paper in this way, by giving the holder a large draft for it, he frequently reissued it, or paid it out again in the course of the company's business at the mine; but when it was finally paid in New York, it was cancelled and destroyed.

On this and similar evidence the following questions arose, concerning which the defendant requested the court to instruct the jury in his favor, and for a verdict of acquittal:

"1st. Whether the instrument was on its face subject to be stamped?

"2d. Whether the evidence tending to prove that Isham was superintendent of the Iron Cliffs Company, and drew the instrument in that capacity, or that Canda was the treasurer of the said company, and the instrument was drawn upon him in that capacity, or that the said paper was drawn in the course of the company's business, was relevant and admissible?

"3d. Whether, if the paper in question was made and issued with the design that it should be used as a local circulating medium, and was actually used by the holders as such, it thereby became subject to be stamped, and whether the evidence given by the prosecution, tending to prove these facts, was relevant and admissible?

"4th. Whether, assuming every fact which the evidence in support of the prosecution tended to prove, the defendant was guilty of the offence charged?

"5th. Whether the information in this case sufficiently charged any offence under the laws of the United States?"

And the following further question, upon which the district attorney requested the court to charge in favor of the prosecution:

"6th. Whether if the instrument set forth in the information and adduced in evidence was issued with the design and intent to secure time for the payment of the debt it represented, it was therefore subject to stamp duty?"

Which questions (the judges being divided in opinion upon them) were now certified to this court for its opinion.

*Mr. S. F. Phillips, Solicitor-General, for the United States:*

The schedule of instruments required by the act of 1864 to be stamped, includes in its second paragraph (as quoted *supra*, p. 496), " any *memorandum*, *check*, &c., or other written or printed evidence of an amount of money to be paid on demand."

The instrument under consideration is a " check." If not a " check," it is a " memorandum, or other written or printed evidence of an amount of money to be paid on demand." This would be the ordinary and popular view of the instrument, and if either a " memorandum " or " check," " or other written or printed evidence for a sum of money to be paid on demand," &c., it must be stamped.

In legal view, however, instruments which assume the form of drafts, but which are drawn by a party *upon himself*, although loosely and for general purposes, as we have said, styled *drafts* or *checks*, are, in essence, promissory notes. The case is the same where the drawer and the drawee are apparently different persons, but in truth mere agents of one person known to all parties, and acknowledged as the only debtor in the transaction. In such cases the paper is *accepted* from its origin, and the contingent liability of the drawer, so characteristic of mere checks, never arises, being merged before issue in the absolute liability of the same person, as acceptor. That such instruments are promissory notes, was decided in England in the leading case of *Miller* v. *Thomson*,[*] and has been sustained in several cases in this country; notably by the high commercial authority of the

---

[*] 3 Manning & Granger, 576.

Court of Appeals of New York in *Fairchild* v. *The Ogdens-burgh Railroad Company*.*

Now, here the evidence shows, that the drawer (Isham), payee (Isham again), and drawee (Canda) were agents of one corporation, the only debtor; and indeed that Isham himself, the drawer, redeemed the bills when they had got in considerable amounts ($1000 to $2000) in the hands of a bank, banker, or merchant.

Independently of the evidence the character of the instrument is disclosed on its face. It is there numbered 1190. It is shown to be one of a large number, of like sort, issued by a company in the region of the iron mines, engaged in dealing in iron. Isham, the drawer and payee, is styled "sup't," superintendent. Canda, designated as of New York, the source of capital, no one could doubt was a treasurer.

Alike visibly and by proofs, the transaction was a device to avoid the payment of a stamp duty, and its operation was a fraud on the internal revenue act.

*Messrs. C. P. James and J. Hubley Ashton, for the prisoner,* argued contra :

1st. That doubtless the words "memorandum, check," printed in the statute-book with a comma between them, were, in respect of the comma, incorrectly printed; that statutes as engrossed had no punctuation in them; that, as this court has said,† punctuation is "a most fallible standard" by which to interpret an instrument, and that the act as passed was doubtless "memorandum check." Aided by the printer, the words should have appeared "memorandum-check." This quite altered the sense.

As for the rest of the phrase, "other written or printed evidence," &c., the preceding part of the schedule having,

---

* 15 New York, 337; and see Hasey v. The White Pigeon Beet Sugar Company, 1 Douglass, Michigan, 193.

† Ewing v. Burnett, 11 Peters, 54; and see Ex parte Irvine, 1 Pennsylvania Law Journal, 292 and 300, where the observation was applied to a statute.

by exclusion, specifically described this instrument, the general words would not apply.

2d. That the instrument was, *in form*, a draft or order tor the payment of money drawn upon a person other than "a bank, banker, or trust company," and it was for less than $10; that the stamp duty was to be regulated by *the form* of the paper; and that not being in form a promissory note, the stamp requisite for instruments which were in that form was unnecessary.

The paper, therefore, required no stamp, and the prosecution must fail.

Mr. Justice HUNT delivered the opinion of the court.

We are of the opinion that the position taken by the counsel of the defendant is correct,—that the paper issued required no stamp, and that the prosecution must fail.

The schedule of instruments required by the statute of 1864 to be stamped, designates the various instruments and writings to be taxed by the well-known names and descriptions of the paper, and specifies the amounts of duty in substance as follows:

1st. Every bank-check, 2 cents.

2d. Every draft or order for the payment of any sum of money *at sight or on demand* (except where the draft or order is so drawn on a person, company, or corporation other than a bank, banker, or trust company, and for a sum not exceeding $10), 2 cents.

3d. Every bill of exchange, draft, or order for the payment of any sum of money *otherwise* than *at sight or on demand*, for every $100, 5 cents.

4th. Every promissory note, for each $100, 5 cents.

5th. Every memorandum, check, receipt, or other written or printed evidence of an amount of money to be paid on demand or at a time designated, for a sum not exceeding $100, 5 cents.

6th. If the draft or order is drawn on a person not a banker, or a bank or a trust company, and does not exceed $10, then no stamp is required.

There is probably an error in the punctuation of the statute in regard to the item which reads, "memorandum, check, receipt, or other written or printed evidence of an amount of money to be paid." It should read "memorandum-check (with a hyphen between the words), receipt, or other written or printed evidence." A "check" was specifically provided for already in the schedule, and it is not to be assumed that Congress would, in the same schedule, make two provisions, differing from each other, for the same subject. A memorandum-check, however, is an instrument well known in the commercial law, which, it might be claimed, did not come under the general term of a check, and which, therefore, had not been specifically provided for. A memorandum-check is in the ordinary form of a bank-check, with the word "memorandum" written across its face, and is not intended for immediate presentation, but simply as evidence of an indebtedness by the drawer to the holder.

Mr. Parsons, in his work on Notes and Bills,* says : "It has been said that the word 'memorandum,' or 'mem.,' written on the check would not affect the right of the holder. We think this might have been doubted, because there is a well-known custom in all our commercial cities of drawing and using checks in this form merely as due-bills, or as what they are, and are called 'memorandum-checks.' "

In *Dykers* v. *The Leather Manufacturers' Bank,*† it was said : "The weight of the testimony is, that this memorandum amounts to nothing more than an indication of an understanding that the check is not to be presented immediately for payment, so as to destroy the drawer's credit with the bank, where he has not provided funds to meet the draft."

It is stated further in Parsons,‡ that the holder *may* present the same for payment, if the name of the bank is not cancelled on the check.

In *Franklin Bank* v. *Freeman,*§ the court speak of memo-

---

* Vol. 2, p. 66.          † 11 Paige, 615.
‡ *Supra.*                § 16 Pickering, 535.

randum-checks as well known in Boston, and say that the rules of business with regard to them are well understood.

In *Glover* v. *Graeser*,* it is said that memorandum-checks, being regular bank-checks with the word "memorandum" written on their face, are constantly used in settlement of accounts between merchants, as admissions of amounts of money due.

This reading makes the statute harmonious and sensible, providing for bank-checks, drafts, inland bills, promissory notes, memorandum-checks, receipts, and assigning to each its proper position.

It is said that in many instances the statute refers to the same subject more than once, under different names, and with different rates of duty, and that embarrassment in the construction of the statute may arise from this cause. Thus a check, whether drawn upon a bank or an individual, is in the nature and form of an inland bill of exchange, having a drawer, a drawee, and usually a payee. The statute describes checks, drafts, and promissory notes, and subsequently speaks of a memorandum-check; also of a receipt or other written or printed evidence of an amount of money to be paid. These general terms plainly include the specifications already made. A bank-check, a memorandum-check, a draft, or a bill of exchange each furnishes written or printed evidence of an amount of money to be paid. So does a promissory note. A note is, indeed, the regular and usual evidence in dealings between men, that money is to be paid, whether in cities or in the country, and whether the transactions be limited or extensive; and yet, bank-checks and drafts, or orders at sight or on demand, require different stamps from memorandum-checks, bills of exchange, and promissory notes.

A few simple rules will dispose of the most of the difficulties that may arise:

1st. Instruments described in technical language, or in

---

* 10 Richardson's Equity, 446.

terms especially descriptive of their own character, are classed under that head, and are not to be included in the general words of the statute.

2d. The words of the statute are to be taken in the sense in which they will be understood by that public in which they are to take effect. Science and skill are not required in their interpretation, except where scientific or technical terms are used.

3d. The liability of an instrument to a stamp duty, as well as the amount of such duty, is determined by the form and face of the instrument, and cannot be affected by proof of facts outside of the instrument itself.

4th. If there is a doubt as to the liability of an instrument to taxation, the construction is in favor of the exemption, because, in the language of Pollock, C. B., in *Girr* v. *Scudds* * "a tax cannot be imposed without clear and express words for that purpose."

These principles are based in good sense, and are sustained by the authorities.

In *Williams* v. *Jarrett*,† where the question was, whether a bill was liable to the stamp duty imposed upon bills "exceeding two months after date," it was held, that the date meant the time expressed on the face of the bill, and that it did not depend upon the fact that the bill actually had more than two months to run. Denman, C. J., says: "If a bill bears no date, we must ascertain by evidence the day when it issued, but where there is a date, that must be considered as the time to which the schedule refers."

In *Whistler* v. *Forster*,‡ the same language is used by Erle, C. J., and by Willes, J. The latter says: "Drafts payable to order, not being affected by either of those enactments, fall within the law as to bills of exchange, which have been repeatedly held not to be void by post-dating, though that

---

* 11 Exchequer, 191; see also Conroy *v.* Warren, 3 Johnson's Cases, 259, to the same effect.

† 5 Barnewall & Adolphus, 32.

‡ 14 Common Bench (New Series), 257.

should have the effect of making the instrument require a less stamp than if it had been dated correctly and payable at the same time."

In *Bull* v. *O'Sullivan*,* decided in 1871, the cases of *Whistler* v. *Forster*, and *Williams* v. *Jarrett*, are approved, and the rule is thus announced: " There is nothing in the statutes to invalidate a post-dated check on a banker payable to order on demand, and in determining what is the requisite stamp to make such an instrument admissible in evidence, the instrument alone is to be looked at. Such a check is available in the hands of a person who took it with knowledge that it was post-dated, and is admissible in evidence with only a penny stamp." Hannan, J., further says: " We are of opinion that the stamp acts above referred to, so far as they relate to bills of exchange and orders for the payment of money, deal with those documents only as they appear on their face, without reference to any collateral agreement or condition by which their apparent operation may be affected."

It is not necessary, in this view of the case, to decide whether an order drawn by one officer of a corporation upon another officer of the same corporation is in law a promissory note, nor whether it may simply be treated as such in pleading; nor is it necessary to decide whether the fact that the order is drawn upon Mr. Canda individually, and not as treasurer of the corporation, will affect the result. Whatever may be the law on this subject, it will not affect the case before us. The instrument we are considering is, in form, a draft or check upon an individual. It is not in form a promissory note. It must, therefore, pay the stamp duty of a draft or order, and not that of a promissory note. It is not permissible to the courts, nor is it required of individuals who use the instrument in their business, to inquire beyond the face of the paper. Whatever upon its face it purports to be, that it is for the purpose of ascertaining the stamp duty. The paper here, as we have said, has the dis-

---

* Law Reports, 6 Q. B. 209.

tinctive form of a draft or check upon an individual. It falls under that specific description, and is to be taxed according to that description, not varied by proof, and not ranked under any general terms contained in the statute.

It is said that the transaction proved upon the trial in this case, is a device to avoid the payment of a stamp duty, and that its operation is that of a fraud upon the revenue. This may be true, and if not true in fact in this case, it may well be true in other instances. To this objection there are two answers:

1st. That if the device is carried out by the means of legal forms, it is subject to no legal censure. To illustrate. The Stamp Act of 1862 imposed a duty of two cents upon a bank-check, when drawn for an amount not less than twenty dollars. A careful individual, having the amount of twenty dollars to pay, pays the same by handing to his creditor two checks of ten dollars each. He thus draws checks in payment of his debt to the amount of twenty dollars, and yet pays no stamp duty. This practice and this system he pursues habitually and persistently. While his operations deprive the government of the duties it might reasonably expect to receive, it is not perceived that the practice is open to the charge of fraud. He resorts to devices to avoid the payment of duties, but they are not illegal. He has the legal right to split up his evidences of payment, and thus to avoid the tax. The device we are considering is of the same nature.

Another answer may be given to the objection, more comprehensive in its character. It is this: that the adoption of a rule that the form of the instrument can be disregarded, and its real character be investigated for the purpose of determining the stamp duty, would produce difficulties and inconveniences vastly more injurious than that complained of. Such a rule would destroy the circulating capacity of bills, or drafts, or orders. The present act imposes the same stamp duty upon inland bills of exchange and promissory notes, but this is an accidental circumstance only. Suppose that the draft is made subject to a tax of five cents on the

hundred dollars, and the note to a tax of ten cents on the hundred dollars. The defendant contends that a draft or bill drawn by one officer of a company upon another officer of the same company, is, in legal effect, a promissory note. Upon the supposition thus made, its real character would require a tax of twice the amount of that indicated upon its face, and if the stamp be too small, the instrument is absolutely void from its inception.* In the language of the statute, it shall be " deemed invalid and of no effect."

Is every man to whom a paper in the form of a bill of exchange is presented, bound to inquire whether there are not outside circumstances that may affect its nature? Having ascertained this, is he bound to delay all proceedings until he can take legal advice upon its nature and character? This he must do upon the theory contended for, and he must be certain, also, that his advice is correct; otherwise he will lose the money he advances upon the bill. The same rule, it is contended, will apply where the drawee does not appear upon the face of the bill to be an officer of the company. Such is the case before us, where Mr. Canda, the drawee, does not appear upon the bill itself to be connected with the company, and yet the prosecution contends that it may be proved that he is its treasurer, and that thereupon the instrument ceases to be a draft or order for the payment of money, and becomes a promissory note.

That the rule contended for is impracticable in a commercial country is too obvious to require farther illustration. We are satisfied that the principles heretofore laid down must govern the case before us.

These views require that an answer in the negative should be given to each of the questions certified to this court. They are accordingly so answered, and the record must be returned to the court below with directions to

DISMISS THE INFORMATION.

---

* Stat., § 158.