## WILLIAM H. MULLINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 13917. Promulgated November 24, 1928.

*Henry J. Richardson, Esq.,* and *C. W. Dudley, Esq.,* for the petitioner.

*Maxwell E. McDowell, Esq.,* for the respondent.

430

432

OPINION.

Van Fossan: This proceeding presents substantially only one question for determination; namely, whether or not the series of transactions as a result of which the petitioner acquired $873,260 in cash and 24,788 shares of common stock in the New Company constituted an exchange of stock in the Old Company for cash and stock in the New Company; that is, an exchange of property for other property, within the meaning of section 202 (b) of the Revenue Act of 1918. Only an affirmative answer to this question necessitates a determination of the fair market value of the common stock of the New Company on the date acquired by the petitioner. The second allegation of error set forth in our preliminary state-

ment was not urged at the trial. It is merely incidental to the main issue, automatically disposed of therewith, and requires no independent consideration and determination.

The petitioner contends that the 24,788 shares of common stock of the New Company were not received in exchange, or partial exchange, for his stock in the Old Company, but were purchased by him for cash. The respondent contends that the sale by the Old Company of its property and assets to the New Company, the distribution of the cash proceeds to petitioner on behalf of all stockholders pro rata, the purchase by the bankers pursuant to a prior agreement with the petitioner of preferred and common stock in the New Company, the purchase by petitioner of common stock in the New Company on behalf of all stockholders of the Old Company pro rata and the distribution by petitioner of the cash and new common stock to the stockholders pro rata, were all steps in a single plan of reorganization. In this reorganization and by means of the plan adopted, it is contended, the petitioner and other stockholders exchanged their stock in the Old Company for cash and common stock in the New Company. The gain derived from such an exchange, the respondent insists, is taxable under section 202 (b) of the Revenue Act of 1918, and in computing such gain the fair market value of the common stock in the New Company must be added to the cash received.

The provision of section 202(b) of the Revenue Act of 1918 relied upon by the respondent is:

When property is exchanged for other property, the property received in exchange shall, for the purpose of determining gain or loss, be treated as the equivalent of cash to the amount of its fair market value, if any.

It may be conceded that the purpose and plan of this transaction was a reorganization of the Old Company, but that fact is not determinative of the question here nor is it of any special significance. We are concerned only with whether or not the petitioner received 24,788 shares of common stock in the New Company, plus cash, in exchange for stock in the Old Company, within the meaning of the Act. And this question must be resolved upon what was actually done, and not the effect of what was done (*B. F. Saul*, 4 B. T. A. 639, 647), nor upon what may have been the design and purpose of the parties to the transaction (*United States* v. *Phellis*, 257 U. S. 156, 172). Neither is it material that the same result might have been obtained by some other method or plan of reorganization. In the case of *Anna M. Harkness*, 1 B. T. A. 127, 130, we said:

It seems to us to be fundamentally unsound to determine income tax liability by what might have taken place rather than what actually occurred. Even though the practical effect may be the same in either case, the resulting tax liability may be quite different. *United States* v. *Isham*, 17 Wall. 496.

Speaking generally, in determining what was actually done in any case, this Board will regard substance rather than form. However, material and essential facts will not be dismissed or put aside as mere matters of form simply because they are related to and are steps in a comprehensive plan of reorganization, or together constitute a method for the attainment of a single desired result. *Edward A. Langenbach*, 2 B. T. A. 777, 784. In the instant case each step employed to bring about the ultimate result was essential to the consummation of the transaction and it can not be said that each, or any one, was not substantial.

At the beginning of the transactions set forth in our findings, the petitioner possessed 1,858 shares of stock in the Old Company; at the conclusion he possessed a certain amount of cash and 24,788 shares of new stock. It does not necessarily follow, however, that the new stock was obtained in exchange for old stock. The old stock was not transferred or assigned to the New Company, and the new stock was not acquired from the Old Company. Neither company at any time acquired or owned any stock in the other. The two companies were separate and independent entities. The Old Company sold its assets to the New Company and received cash in payment. The petitioner, as agent of the stockholders of the Old Company, acquired the new stock from the New Company and paid cash for the same. As a stockholder of the Old Company he received his proportion of the cash dividend declared and distributed by that company. The fact that the petitioner promoted the reorganization and represented the interested parties in handling the details, does not alter the true character of the transactions.

The sale by the Old Company of its' assets to the New Company, the distribution by the Old Company of the cash dividend to its stockholders, and the purchase by the latter of stock from the New Company were separate transactions between independent entities. The fact that these several transactions together comprised a single plan of reorganization does not render them any the less separate and distinct undertakings. The nature of each transaction is determinable from the facts relating to it, and is not changed because of its association with other transactions in a larger and more comprehensive plan.

In the *Langenbach* case, *supra*, there was a reorganization promoted by the taxpayer, principal stockholder of the old corporation. The taxpayer, for himself and other old stockholders, and a firm of investment bankers purchased the stock of the new corporation. The old corporation sold its assets and property to the new corporation for cash, and then distributed that portion of the cash representing surplus to the taxpayer and other stockholders as a dividend. The

taxpayer and other stockholders sold their old stock at par to the new corporation for cash and the old corporation was dissolved. The taxpayer contested the proposed tax upon this dividend and sale of stock on the ground that he had merely exchanged his old stock for new stock representing approximately the same interest in the same assets. The Commissioner contended that each step was a matter of substance and that a taxable gain was realized from such dividend and sale of stock, which gain he determined to be the difference between the dividend plus the sale price and the March 1, 1913, value of the old stock. It was *held* that the transaction was not an exchange of stock for stock and that each step was a matter of substance. It was *further held* that the gain as determined by the Commissioner was erroneous, that the dividend was one declared in ordinary course and taxable as such, and that the gain derived from the sale of stock was the difference between the amount received therefor and the cost or March 1, 1913, value thereof. The Board said:

Here the corporation declared and the stockholder received a *cash* dividend, which, were it not for his voluntary contract, he had under his complete dominion. At the moment of its receipt he realized income, and what he did with it thereafter, irrespective of how soon, can not change its character at that time. * * *

It is our opinion, therefore, that the taxpayer can not escape tax because the amounts received were incidental to the reorganization.

Similarly in the case at bar, after the sale of all its assets, a cash dividend of $1,750,000 (apparently in liquidation) was declared by the Old Company and paid to Mullins as representative of all the stockholders. Receipt by Mullins as agent was receipt by the stockholders. To the extent, if any, that this cash distribution represented profit it is taxable. The amount of this gain is not, however, before us at this time. The case was tried solely with reference to the contention of the respondent that gain was derived on the acquisition of the stock in the New Company. What the petitioner did with the income thus received, however soon after its receipt, does not alter its character as income, nor is the character of the subsequent transaction in anywise affected by the source of the funds employed by the petitioner therein. The purchase by petitioner of new stock from the New Company with cash borrowed from the bank is no less a purchase and sale because made in anticipation of the dividend, and at or about the time the dividend was received. The respondent can not impose a tax upon the purchase of the new stock by petitioner merely because the purchase was incidental to the reorganization.

The respondent cites the *Langenbach* case in support of his position in this case. We are unable to find any authority in that case for

holding this transaction an exchange of property for other property within the meaning of the 1918 Revenue Act. There we referred to the transaction as a reorganization, but we expressly held that each step was a matter of substance, that the gain derived must be determined upon each step separately and that the several steps could not be combined for the purpose of determining the amount of the gain taxable under the Act. In reaching that conclusion we rejected the taxpayer's contention that the transaction was merely an exchange of old stock for new stock. Thus, the *Langenbach* case, *supra*, is direct authority for the petitioner's contention that the transaction in the instant case was not an exchange of stock in the Old Company for cash and stock in the New Company.

To look at the picture in another way, as agent of the stockholders of the Old Company Mullins borrowed $1,240,000 from the National Bank of Commerce and bought therewith 10,000 shares of preferred and 40,000 shares of common stock of the New Company. Hornblower & Weeks bought 30,000 shares of common stock in the New Company, paying $510,000 for the same. The total of these two sums, $1,750,000, represents all the funds that came into the possession of the New Company and this amount was immediately paid to the Old Company for all of its assets and business. The Old Company thereupon paid the entire sum to Mullins as agent of the stockholders in liquidation of the Old Company. Mullins also had in his hands $900,000 received from the sale of the preferred stock by him to Hornblower & Weeks, or a total, as agent of the stockholders, of $2,650,000. Out of this fund he repaid the loan of $1,240,000, leaving $1,410,000 in cash on hand. This last-mentioned sum was the actual cash distributed by Mullins, as agent, to the stockholders of the Old Company. Mullins also distributed to the stockholders their proportionate share of the common stock of the New Company purchased by him with the borrowed money. In this situation it is clear that the parties to the series of transactions so conducted the several steps thereof that there was neither an exchange of stock for stock nor of stock for cash and stock. To hold that the stockholders of the Old Company received the stock in the New Company as a part of a liquidating dividend would be to read into the transaction something neither appearing in the contracts nor proved at the hearings.

We are of the opinion, therefore, that the petitioner did not acquire or receive the 24,788 shares of common stock in the New Company in exchange for his old stock, or any other property, within the meaning of section 202 (b) of the Revenue Act of 1918. *B. F. Saul, supra;* and *Edward A. Langenbach, supra.* See also *Trust Company of Georgia* v. *Rose*, 25 Fed. (2d) 997; affd., 28 Fed. (2d) 767. Nor

was taxable income received or realized by petitioner from the purchase of stock in the New Company, however advantageous the purchase may have been. In *J. A. Staley*, 9 B. T. A. 932, 934, where it was held that stock in a corporation purchased pursuant to prior commitments or agreements was not received in exchange for property previously owned, we said:

By reason of the previous agreement, the petitioner acquired 25 shares of stock in the corporation, paying therefor in cash pursuant to the terms of the agreement. This amounts to no more than a purchase of such stock pursuant to the terms of an outstanding agreement. Admittedly, the market value of the stock was much greater than the price paid, but such a purchase, however advantageous, gives rise to no taxable income.

The respondent erred in adding to petitioner's taxable income for 1919, otherwise determined, any amount on account of the 24,788 shares of common stock in the New Company acquired by the petitioner. Our conclusion renders unnecessary a determination of the fair market value of the common stock of the New Company.

The second allegation of error contained in the pleadings and set forth in our preliminary statement, is automatically disposed of by our decision upon the first issue and requires no separate discussion and decision.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

PHILLIPS and ARUNDELL dissent.