## WILLCUTS, Collector of Internal Revenue, v. INVESTORS' SYNDICATE.

### No. 9217.

Circuit Court of Appeals, Eighth Circuit.

March 22, 1932.

Eldon O. Hanson, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Lewis L. Drill, U. S. Atty., of St. Paul, Minn., and M. W. Goldsworthy, Sp. Asst. to U. S. Atty., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, both of Washington, D. C., on the brief), for appellant.

Charles W. Briggs, of St. Paul, Minn. (Henry M. Isaacs, of Minneapolis, Minn., and Clapp, Elmquist, Briggs, Gilbert & Macartney, of St. Paul, Minn., on the brief), for appellee.

Before STONE and BOOTH, Circuit Judges, and WYMAN, District Judge.

BOOTH, Circuit Judge.

This is an action at law brought by the Investors' Syndicate against Willcuts, collector, to recover the amount of federal stamp taxes collected by him from said corporation for the period from January 1 to June 30, 1928.

Trial by jury was waived, and the case was submitted to the trial court on a stipulation of facts. The court found in favor of the plaintiff.

The stamp taxes in question were claimed by the collector to be due, and were collected, upon certain accumulative installment certificates issued by the Investors' Syndicate during the period in question. The syndi-

cate claimed that the certificates were not taxable. No question of amount is involved.

Parts of the certificate are set out in the margin.[1]

The following facts were stipulated relative to the issuance of certificates and the keeping of records regarding the same:

"The said so-called 'accumulative installment certificates' * * * were issued by the plaintiff herein in the following manner, and information concerning the same kept as herein stated.

"A person desiring to become a holder of a so-called 'accumulative installment certificate' made an application therefor on the basis of such annual payments as the applicant may have desired to make. All such applications were made on a form identical with the copy thereof attached to plaintiff's complaint. * * *

"If the Syndicate accepted the application, a certificate in form and substance identical with * * * (the one) attached to plaintiff's complaint, was issued by said plaintiff to the applicant, and the applicant was given a pass book, a copy of which is attached to plaintiff's complaint. * * *

"At the same time, a ledger card, a copy of which is attached to plaintiff's complaint * * * was filled in with the holder's name, his address, the name of the sales manager, the name of the salesman, the date of the issuance of the certificate, the amount to be paid at the maturity of said certificate, the consecutive number of the said certificate, and the method of payment of installments elected by the holder.

"As payments were made and are made they were and are recorded in the said pass book and were and are credited to the holder upon the said ledger card, subject to the terms and conditions of said certificate.

"The number representing the certificate number was placed upon the ledger card, application blank, cross reference card * * * and pass book, upon which appears the name of the owner of the certificate. The ledger cards are the permanent records of the plaintiff corporation and are filed numerically."

It was further stipulated: "That from on or about the 1st day of January, 1928, until on or about the 30th day of June, 1928, plaintiff * * * had from time to time issued so-called 'accumulative installment certificates' the total sums to be paid at the maturity of which would equal the sum of $30,-745,500.00 (if and providing the installment payments have been and are paid and all other conditions performed in accordance with the terms and provisions of each and all of the same), each of said so-called 'accumulative installment certificates' having been in substance and form exactly similar to Exhibit 'A' attached to plaintiff's complaint and made a part thereof, except that upon the issuance of each of the so-called 'accumulative installment certificates' the blanks appearing thereon were appropriately filled in with words and figures denoting the amount to be paid at maturity, the consecutive number and order of issue, the name of the holder, his address, and the date of the issuance thereof. The amount of the contemplated annual payments was set out in the body of the certificate on the first page thereof, following the words 'of the payment of' and preceding the word 'Dollars', being a sum in dollars at the rate of $74.00 per thousand of the amount to be paid at the maturity of said certificate. The amount to be paid at maturity (and alleged by the Commissioner to be the face value of the certificate)

[1] "Dollars ———. Number ———.
"Founded 1894
"Investors Syndicate
"Incorporated Under the Laws of the State of Minnesota,
"Minneapolis, Minnesota
"Accumulative Installment Certificate
"This Is To Certify that in consideration of the payment of ——— Dollars, annually in advance during the period of ten years from date hereof, the Investors Syndicate, first party, hereinafter referred to as the Company, hereby promises to pay to ——— of ——— hereinafter referred to as the second party, at the expiration of said period, upon presentation and surrender of this Certificate to the Company at its office in the City of Minneapolis, Minnesota, the sum of ——— Dollars.
"This Certificate is subject to the privileges, terms and conditions on the second, third and fourth pages hereof which are hereby referred to and made a part hereof, as fully, as if set forth in the face of this Certificate.
"In Witness Whereof the Company has caused this Certificate to be executed in its corporate name at Minneapolis, Minnesota, this ——— day of ——— 19——.
"Investors Syndicate,
"By J. R. Ridgway, President.
"Attest: E. M. Richardson, Secretary.
"Countersigned by ———.
"5-½%"
[Among the privileges, terms and conditions are provisions as to cash and loan values after eighteen months; also the following:]
"Assignment. This Certificate if in force and uncancelled on the books of the company may be assigned, but the assignment or transfer hereof shall not be valid without the consent in writing endorsed hereon by the company and a transfer fee of $1.00 paid to the company. * * *
"Cash in full guaranteed at maturity. Anything in this Certificate to the contrary notwithstanding, the second party shall at the time of maturity be entitled to receive, and the company guarantees then to pay in cash the face amount hereof less any indebtedness due the company."

was stated in figures underneath the word 'Dollars' appearing in the upper left corner of the certificate and was also stated in words immediately following the words 'the sum of' and preceding the word 'Dollars' set out in the body of the certificate, all on the first page thereof."

The relevant statutes are as follows:

Section 800, title 8, of the Revenue Act of 1926 (26 USCA § 901 and note): "Sec. 800. On and after the expiration of thirty days after the enactment of this Act there shall be levied, collected, and paid, for and in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in Schedule A of this title, or for or in respect of the vellum, parchment, or paper upon which such instruments, matters, or things, or any of them, are written or printed, by any person who makes, signs, issues, sells, removes, consigns, or ships the same, or for whose use or benefit the same are made, signed, issued, sold, removed, consigned, or shipped, the several taxes specified in such schedule. The taxes imposed by this section shall, in the case of any article upon which a corresponding stamp tax is now imposed by law, be in lieu of such tax."

Section 801 of the Act (26 USCA § 902 and note), makes certain exemptions.

Schedule A(1) referred to in section 800 (26 USCA § 901, Schedule A(1), reads as follows: "Bonds of indebtedness: On all bonds, debentures, or certificates of indebtedness issued by any corporation, and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities, on each $100 of face value or fraction thereof, 5 cents: Provided, That every renewal of the foregoing shall be taxed as a new issue: Provided further, That when a bond conditioned for the repayment or payment of money is given in a penal sum greater than the debt secured, the tax shall be based upon the amount secured."

The trial court held that the certificates came within the classification "corporate securities" mentioned in the schedule, but that they had no face value at the time of their issue and during the period in question, and hence were not taxable.

Two questions are involved in the case: First, whether the accumulative installment certificates came within the general class of "corporate securities" made taxable; second,

whether they had a face value so that the tax could be computed.

In our opinion, the intention of Congress was that the statute involved should be broad and comprehensive. This intent is evidenced by the language used in the sections quoted; and it is further shown by the fact that in section 801 certain exemptions were specifically mentioned.

It is to be noted first of all that the tax imposed was not a property tax; nor was it a tax upon transactions. It was a stamp tax.

The statute contains the provision: " * * * There shall be levied * * * or in respect of the vellum, parchment, or paper upon which such instruments * * * are written or printed ' * * the several taxes specified in such schedule."

■ As respects this kind of taxes, the liability to pay a stamp duty, as well as the amount, is to be determined by the form and face of the instrument. United States v. Isham, 17 Wall. 496, 21 L. Ed. 728. The case of Goodyear Tire & Rubber Co. v. United States, 273 U. S. 100, 47 S. Ct. 263, 71 L. Ed. 558, is to be distinguished. In that case a transfer tax was involved, not a documentary tax.

■ Provisions of the taxing law are to be reasonably construed in order to carry out the intent of Congress.

In Fidelity Trust Co. v. Lederer, 276 F. 51, 53, involving car trust certificates, the District Court, in construing a somewhat similar statute, said: "All forms of so-called securities or investments issued by corporations, whether expressive of indebtedness or shares in anything the corporation possesses, are without doubt taxed, as are also all forms of instruments expressive of the indebtedness of any person to the holder."

In affirming this decision, the Supreme Court said (267 U. S. 17, 21, 45 S. Ct. 206, 207, 69 L. Ed. 494): "As a matter of common speech, to which the statute refers, we have no doubt that these instruments would be known as corporate securities. They would be called so more accurately than some other documents which we believe also would be known generally by that name. Their purpose, as stated in the agreement of the trustee with the railroad, is to secure payment to the holder with interest. They do nothing else. We do not regard the precise limits of the Trust Company's undertaking as important. If it were only to collect and

814

pay money received by the Company under the secured contract of the Railroad it would be a security for money payment."

These decisions were made in construing the Act of February 24, 1919, title 11, § 1100, and Schedule A(1), 40 Stat. 1057, 1133, 1135, a different statute from the one in the case at bar; but the 1919 statute levied taxes on certain instruments "known generally as corporate securities," as did the statute in the case at bar, so that the language quoted is pertinent.

 The words "securities" and "certificates" and "corporate securities" were not technical, but were in common use at the time of the passage of the Revenue Act of 1926, and should be construed in accordance with their ordinary significance. A corporate security is simply a means adopted by the corporation to secure funds which it can employ in its business; and, by making a larger return on the funds so secured, it is enabled to pay its obligation under the corporate security issued, and also secure an income for itself.

 The documents issued by the Investors' Syndicate in the case at bar have the earmarks of corporate securities. They are printed in the form of corporate securities, and on paper used generally for such securities. The purpose of the issue of the certificates was the same as the purpose ordinarily involved in issuing corporate securities; namely, to secure the money of others for use in the corporate business. The operations of the plaintiff in selling these certificates were subject to the scrutiny of the state authorities having supervision over the selling of corporate securities. In re Investors' Syndicate, 147 Minn. 217, 179 N. W. 1001. The certificates in question were issued in large numbers and in large amounts in the period in question, and were sold throughout the United States and foreign countries. Some $30,745,500 of such certificates were issued between January 1 and June 30, 1928; and the initial collections thereon were $458,424. It is true that, according to the terms of these certificates, they had no surrender or cash value so far as the Investors' Syndicate was concerned until eighteen months had elapsed after the issue; but it cannot be doubted that, from the very moment of issue, the certificates had an actual value based upon the amount that was paid as the initial installment. The time of maturity pay-

ment by the Investors' Syndicate is specifically fixed subject to the performance of the conditions named in the certificate. The document is in form registered. It has a number assigned to it. This number is kept by the Investors' Syndicate to enable it to identify the particular certificate. The certificates are also assignable upon certain conditions. The syndicate undertakes to keep on hand first mortgages on improved real estate or other security to insure the payment of these certificates. A liability of the company from the moment of issue exists, and it is specifically stated as to amount after the certificate has been issued for eighteen months.

The fact that there was not an absolute unconditional liability for the full maturity value at the time of issuing the certificate is immaterial. There was a conditional obligation to pay the full amount at maturity. The statute makes no distinction for taxing purposes between absolute and conditional obligations to pay; the latter as well as the former are taxed. This is conclusively shown by the second proviso of Schedule A(1), 26 USCA § 901, Schedule A(1), which expressly provides for a tax on an instrument of conditional liability. It is also shown by the taxes on certain policies of insurance provided for in Schedule A(7), 26 USCA § 901, Schedule A(7).

We hold that the face value of the certificates in question was the maturity value, for purposes of taxation under the statute, and that the tax was properly assessed and collected.

The only direct authority cited by either side is the case of National Thrift Corporation of America v. Welch, Collector (D. C.) 56 F.(2d) 1077. That case was tried in the District Court for the Southern District of California, Central Division. The certificates involved were substantially the same as the certificates involved in the case at bar. The court held that the certificates were corporate securities; and also "that the face value of said collateral trust thrift certificates was the amount appearing on the face thereof as being due at maturity." Appeal is pending in the Circuit Court of Appeals for the Ninth Circuit.

Our conclusion in the case at bar is that the judgment of the court below should be reversed, and the case remanded for further proceedings. It is so ordered.