*480 OPINION.
Smith :
The evidence refutes the respondent’s reasons for disallowing the claimed deductions for losses upon the sales of stock in the taxable years before us. The sales were made “ with good faith; without fraud or deceit.” Cf. Corrado & Galiardi, Inc., 22 B. T. A. 847. Thereafter, the petitioner had no interest in or control over *481 the stock sold. Likewise, the stock had not become worthless prior to 1926 or in the years under consideration; the Crouse Grocery Company was actively engaged in business and there had been no liquidation of its affairs. The stock may have depreciated considerably in value, but the petitioner could not, under the statute, take a loss unrealized by a sale or other disposition of the stock. As we said in James 8. McGandless, 5 B. T. A. 1, 5:
* * * It is perfectly legal and proper for a taxpayer to sell such assets at a price representing their reduced value and thus to sustain a deductible loss which is allowed him by the statute. United States v. Isham, 17 Wall. 496; Appeal of The Pennsylvania Co., etc., 2 B. T. A. 48; Appeal of Benjamin T. Britt, 2 B. T. A. 53; Appeal of Harold B. Clark, 2 B. T. A. 555.
In computing the deductions allowable under the statute (section 214 (a) (5) of the Revenue Acts of 1924 and 1926), the basis to be used for the stock acquired before March 1, 1918, is its cost or fair market value on that date, whichever is greater (section 204 (b) of the Revenue Acts of 1924 and 1926), and the basis to be used for the stock acquired by purchase after that date is its cost (section 204 (a), Revenue Acts of 1924 and 1926). The petitioner has established only the cost, thereby waiving any benefit that might result from proving a March 1,1913, value in excess of the cost of the stock acquired prior to that date. Petitioner has not identified the one share of common stock purchased in 1920 for $80 as being in any particular lot sold; because of his failure to so identify this share, it will be allocated to the lot upon the sale of which he is claiming the greatest loss, thus bearing “ down heavily upon the petitioner whose duty it was to prove ” the larger loss, if larger loss there was. Cf. American Cigar Co., 21 B. T. A. 464, 490. This allocation will be in accord with the “ first in, first out ” rule, since petitioner sold 848 shares of this stock and we have evidence as to the time of purchase of only 601 shares of this stock. Cf. ’William P. Jenks, 22 B. T. A. 910. The basis for computing the loss upon the sale in 1928 of the preferred stock which had been acquired by petitioner under the will of his uncle is its value “ at the time of the distribution to the taxpayer” (section 113 (a) (5), Revenue Act of 1928). This value has been found to be $80 per share. The deductible losses should be allowed accordingly. Cf. J. Harvey Ladew, 22 B. T. A. 443; Shepard Co., 22 B. T. A. 1368; A. J. Wallace, 23 B. T. A. 858; Deeds v. Commissioner, 47 Fed. (2d) 695.
From the record we can not determine that the respondent erred in disallowing the deduction of $5,465.45 claimed as a bad debt in 1925. The evidence tends to support the petitioner’s contention that this amount was the net balance of the judgment and account against Marlette Crouse, petitioner’s brother, who died in 1925, *482 leaving an insolvent estate. Petitioner testified that he had advanced considerable money to his brother, frequently extricating him from social and financial difficulties. Money so advanced was repaid from trust funds payable to Marlette Crouse from time to time, but in 1918 the petitioner assigned the account against his brother to H. L. Benedict, who procured a judgment against Marlette Crouse, which was assigned to the petitioner. The earnings of Marlette Crouse were garnisheed almost up to the time of his death in partial satisfaction of the judgment. The unpaid balance on the judgment and the $5,500 (one-half of the difference between the 1910 price placed upon the West Genesee Street property and what it sold for in 1916) charged to Marlette Crouse as per the 1910 agreement, make up the amount of the alleged bad debt. There is no explanation of the hiatus between the amount claimed as a deduction for a bad debt and the $5,500 plus the undisclosed balance due on the judgment. While the record sufficiently establishes the insolvency of the estate of Marlette Crouse, it does not show that the petitioner’s claim against the estate was ever established. Furthermore, to allow the claimed deduction would in effect allow the petitioner to deduct as a bad debt the amount which he charged against Marlette Crouse upon the West Genesee Street transaction, which has not been shown to have ever been included in gross income; unless reflected in income, such accounts are not deductible as bad debts. See Searles Real Estate Trust, 25 B. T. A. 1115. In the circumstances, the respondent’s disallowance of the claimed deduction is sustained.

Judgment will J>e entered under Rule 50.