## FIDELITY INVESTMENT ASS'N v. UNITED STATES.
### No. K–445.

Court of Claims.
Nov. 6, 1933.

John Marshall and Louis A. Gravelle, both of Washington, D. C. (Sanders, Childs, Bobb & Wescott, Everett Sanders, and Edward F. Howrey, all of Washington, D. C., on the brief), for plaintiff.

George H. Foster and W. W. Scott, both of Washington, D. C. (Lyndon H. Baylies, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Judge, and GREEN, LITTLETON, BOOTH, and WHALEY, Judges.

WHALEY, Judge.

This suit was instituted by plaintiff to recover the sum of $37,985.00 collected by the defendant as documentary stamp tax under Schedule A (1) of the Revenue Acts of 1924 and 1926 on "Special income contracts" and "Special annuity contracts" issued and delivered by plaintiff during the period from February 1, 1925, to December 31, 1928. The case was tried before a commissioner of this court who took the evidence of the witnesses and made a report to the court of his findings of fact. Both sides took exceptions to the report. After a careful examination of the evidence, the court has made special findings of fact which fully set out all the material facts of the case so it is unnecessary to repeat them in this opinion.

This is a documentary stamp tax case. The Commissioner of Internal Revenue imposed the provisions of Schedule A (1) of title 8, § 800 et seq. of the Revenue Acts of 1924 and 1926, 26 USCA § 901, Schedule A (1) and note on all contracts issued by the plaintiff during the period involved in this suit. The act of 1924 reads as follows, and the act of 1926 is the same except as to the change indicated: "1. Bonds of indebtedness: On all bonds, debentures, or certificates of indebtedness issued by any person [*corporation* in the 1926 act], and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities, on each $100 of face value or fraction thereof, 5 cents: *Provided,* That every renewal of the foregoing shall be taxed as a new issue: *Provided further,* That when a bond conditioned for the repayment or payment of money is given in a penal sum greater than the debt secured, the tax shall be based upon the amount secured." 43 Stat. 333, 44 Stat. 101.

██ The Commissioner having imposed the tax, the presumption of its correctness remains until overcome by proof of its wrongful and erroneous imposition. The burden of proof was on the plaintiff to overcome this presumption. The plaintiff is a corporation and issued its corporate instruments. The statute requires a stamp on "all instruments, however termed, issued by any corporation with interest coupons or in registered form, *known generally* as corporate securities." (Italics ours.) The instruments issued by the plaintiff were registered but had no interest coupons. The real issue before us is the true nature of these instruments. Were the instruments issued by the plaintiff known generally as corporate securities? The term "known generally" means familiar to those who deal in corporate securities and who buy and sell that class of paper. Are they known generally to the business world which handles corporate instruments as securities for investment? From the face and form of these instruments they do not fall into those classes of instruments which can be easily recognized from their face and form as corporate securities. The act is broad in its scope, and must be liberally construed when applied to specific, well-known instruments of corporations which are recognized as securities. The act plainly makes the nature and character of the corporate instrument a question of fact. This fact can be established in two ways. If the instrument is plainly and patently on its face a secured corporate indebtedness, oral evidence would be superfluous, but where the instrument is doubtful in its characteristics and appearance, then oral evidence of its true nature given by those who

are familiar with such papers, and who buy and sell corporate securities, is necessary to determine its actual character. The plaintiff has produced three reliable witnesses who have qualified as experts in the business of corporate securities. The evidence is clear and convincing that these instruments issued by the plaintiff are not generally known to those who deal in corporate securities and are not dealt in by the corporate security trade as corporate securities. Although the plaintiff conducts its business in many states and has a wide field of activity, the defendant has failed to produce a single witness to overcome, or throw the slightest shadow of doubt on, this testimony. We have found as a fact from the evidence that the instruments issued by the plaintiff are not generally known as corporate securities. This fact having been ascertained finally disposes of the case. The defendant, however, contends that the case is controlled by the rulings of the several courts commencing with the case of United States v. Isham, 17 Wall. 496, 503, 21 L. Ed. 728; and followed by the decisions in Lederer v. Fidelity Trust Company, 267 U. S. 17, 45 S. Ct. 206, 207, 69 L. Ed. 494; National Thrift Corporation of America v. Welch (D. C.) 56 F.(2d) 1077, 1078, and Willcuts v. Investors' Syndicate (C. C. A.) 57 F.(2d) 811; and that these cases show the question to be one of law and not of fact. We are not in accord with this contention as to the true interpretation of these decisions and as to what they really decide. We have carefully analyzed these cases and have concluded that they are not applicable, as we will show.

In the construction of stamp taxing statutes the courts have relied on certain rules laid down in the case of United States v. Isham, supra. An examination of that case shows that these rules were promulgated for the guidance of those who had to construe a statute which dealt with specific commercial instruments, such as checks, drafts, promissory notes, etc. All of these instruments were well known to the commercial world, both as to form and as to face, and were so well defined by the commercial law that the courts could take judicial cognizance of them. In the statute which the court was construing at that time there was no sweeping clause of a general character which would admit of doubt as shown by the form and face of the instrument. The court therefore laid down the following rules by which these instruments were to be judged:

First. Instruments described in technical language, or in terms especially descriptive of their own character, are classed under that head, and are not to be included in the general words of the statute.

Second. The words of the statute are to be taken in the sense in which they will be understood by that public in which they are to take effect. Science and skill are not required in their interpretation, except where scientific or technical terms are used.

Third. The liability of an instrument to a stamp duty, as well as the amount of such duty, is determined by the form and face of the instrument, and cannot be affected by proof of facts outside of the instrument itself.

Fourth. If there is a doubt as to the liability of an instrument to taxation, the construction is in favor of the exemption, because, in the language of Pollock, C. B., in Gurr v. Scudds (11 Exchequer 191) "a tax cannot be imposed without clear and express words for that purpose."

The statute with which we have to deal, after naming specifically certain well-known securities, such as bonds, certificates of indebtedness, etc., has a sweeping clause to it—"all instruments * * * issued by any corporation * * * known generally as corporate securities. * * *" These words include a wide and varied field and are intended to cover all instruments issued by corporations which are generally known by those who deal in such instruments as corporate securities. With this broad clause it would be impossible to judge an instrument by its face or form alone, and it would be necessary to ascertain if an instrument was generally known as a corporate security and dealt in by those who were familiar with this line of business as a corporate security. It would be impossible for the court to take judicial cognizance of it from its appearance because of the doubtful nature of the security, and the lack of knowledge if it is generally known as a corporate security.

The Lederer Case, supra, is not applicable to this case. The facts were materially different. The car certificates involved in that case plainly showed on their face that they were corporate instruments to secure amounts with interest which had been paid for them, and the amount stated on the face of the certificate was actually paid by the subscriber. Both the District Court (276 F. 51) and the Supreme Court (267 U. S. 17, 45 S. Ct. 206, 69 L. Ed. 494) held that the certificates were corporate securities within

the statute. In adopting the rule in the Isham Case, the Supreme Court said: "We are content to adopt the respondent's rule for this case, *as upon any* rule the result seems to us clear." (Italics ours.) In other words, the court held the very face and form of the certificates were sufficient to find as a fact that they were corporate securities.

The Solicitor General in his brief to the Supreme Court in opposition to the issuing of a writ of certiorari (denied Oct. 10, 1932, 287 U. S. 618, 53 S. Ct. 18, 77 L. Ed. 537) in the case of the Investors' Syndicate, supra, which involved the construction of this statute and the clause which we are now considering, states: "The Commissioner having imposed the tax, the burden rests upon the petitioner to show that its instruments were not of the class 'known generally as corporate securities.' As this was obviously a question of fact, the silence of the stipulation with respect to it would seem to preclude petitioner from urging that its certificates are not in the class taxed by schedule A-1."

It will be seen from this statement that there was no evidence taken as to whether the instruments considered by the court in the above case were generally known as corporate securities, and the stipulation being silent as to that fact, and the petitioner having offered no evidence to overcome the presumption that the Commissioner's ruling was correct, there was nothing for the court to do but deny the petition. The case of Investors' Syndicate, supra, was based on the decision of the case of National Thrift Corporation of America v. Welch, supra. This case would seem to be closely analogous to that under consideration, but an examination of the Thrift Case shows that oral evidence was offered by both the petitioner and the government as to the fact of whether the instruments were generally known as corporate securities, and the court made a definite, clear finding of fact that "these certificates were generally known as corporate securities." With this finding of fact, of course the statute applied, and the stamps were correctly imposed. But in the case at bar the Commissioner of Internal Revenue imposed the tax, and the burden was on the petitioner to overcome the presumption that the instruments were generally known as corporate securities, and therefore the tax was correctly imposed, and this burden the plaintiff has successfully assumed.

In the Goodyear Tire & Rubber Company Case, 273 U. S. 100, 47 S. Ct. 263, 71 L. Ed. 558, the tax was on the transfer of stock. Although the certificates stated on their face the par value was $100, the charter of the company having been changed and the stock par value reduced to $1 the court held the par value fixed by the corporate charter at the time of transfer is the true par value and controlled in assessing the stamp tax. This case has no bearing on the one before us, as no transfer of stock is involved.

In our opinion, the Commissioner of Internal Revenue erred in imposing the stamp tax on these instruments. The plaintiff is entitled to a judgment. It is so ordered.