MOTTER, Collector of Internal Revenue, v.
BANKERS MORTGAGE CO. OF TOPE-
KA, KAN., et al.
No. 1571.

Circuit Court of Appeals, Tenth Circuit.
Dec. 31, 1937.

· Warren F. Wattles, Sp.' Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and Summerfield S. Alexander, U. S. Atty., and R. T. McCluggage, Asst. U. S. Atty., both of Topeka, Kan., on the brief), for appellant.

T. M. Lillard and Otis S. Allen, both of Topeka, Kan. (O. B. Eidson, and P. H. Lewis, both of Topeka, Kan., on the brief), for appellees.

Before LEWIS, BRATTON, and WILLIAMS, Circuit Judges.

WILLIAMS, Circuit Judge.

The Bankers Mortgage Company of Topeka, Kan., brought this action against the collector of internal revenue for the District of Kansas to recover amounts paid as federal stamp taxes. The mortgage company subsequently going into bankruptcy, its trustee was substituted as a party plaintiff. Trial by jury having been waived, the cause was tried to the court.

The mortgage company was organized under the laws of Kansas. During the periods from October 1, 1923, to January 31, 1931, and from February 1, 1931, to June 15, 1932, it was engaged in issuing and selling to investors its so-called "Guaranteed First Mortgage Savings Bonds" issued and sold in series known and designated as series "B", "C", an "D". During such period it also issued and sold so-called "Installment Investment Bonds" which were known and designated as series "I". A person desiring to purchase one of such bonds made written application, specifying the denomination and series, the required initial payment accompanying same. If accepted, a bond and passbook were issued to the applicant, records being kept of all subsequent payments made by the purchaser. On the face of each bond appeared the amount to be paid by the company at the date of maturity to the then lawful holder, provided all payments had been made and the provisions recited in the bond fully carried out. Each bond contained provisions for cash surrender or loan value and option settlement in event of the death or total disability of the registered holder before the date of maturity. Bonds of series "B", "C", and "D" recited that the company would hold first mortgages on improved real estate on deposit as collateral security for the performance of its obligations in an amount of at least 10 per cent. in excess of its liabilities. Bonds of series "I" contained a similar provision, but gave the company a wider scope as to collateral security. All bonds were assignable if approved on the books of the company, with a transfer fee of $1 to be paid. By virtue of a provision in each bond, the company could at any time pay the owner the full amount that had been paid on the bond with interest compounded annually at the specified rate, and call in the bond.

The collector exacted the stamp tax computed on the face value of the instruments thus issued and sold. Such taxes had been paid under protest. Applications for refund were timely submitted and rejected. The trial court, finding that the instruments were not subject to the tax, entered judgment for plaintiff. This appeal followed.

Section 800, title 8, of the Revenue Act of 1924, 43 Stat. 253, 331, imposes a tax upon the several bonds, debentures, certificates of stock, certificates of indebtedness, and other documents, instruments, matters, and things mentioned and described in Schedule A of that title, 43 Stat. 333, specifying that the tax shall be at the rate of 5 cents on each $100 of face value of all bonds, debentures, or certificates of indebtedness issued, and all instruments however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities. Schedule A, subd. 1. The same numbered section and lettered schedule in the Revenue Act of 1926 is identical in substance. 44 Stat. 9, 99, 101, 26 U. S.C.A. §§ 900, 901. Obviously, it was contemplated by the Congress that the statute should be broad and comprehensive in scope and cover all forms of bonds, debentures, and certificates of indebtedness, and all instruments of every nature issued by a cor-

poration with interest coupons attached or in registered form known generally as corporate securities, and it should be so construed. Willcutts v. Investors' Syndicate, 8 Cir., 57 F.2d 811, certiorari denied 287 U. S. 618, 53 S.Ct. 18, 77 L.Ed. 537; Lawyers' Mortgage Co. v. Anderson, 2 Cir., 67 F. 2d 889, certiorari denied, 297 U.S. 719, 56 S.Ct. 596, 80 L.Ed. 1004.

The controlling factors in determining whether obligations of this kind are subject to the tax are (1) the form and provisions of the obligations, and (2) the circumstances and conditions under which they were issued. It has been said that physical form, size, and appearance are matters of importance for appropriate consideration. United States v. Isham, 17 Wall. 496, 21 L. Ed. 728; Lederer v. Fidelity Trust Company, 267 U.S. 17, 45 S.Ct. 206, 69 L.Ed. 494; Goodyear Tire & Rubber Co. v. United States, 273 U.S. 100, 47 S.Ct. 263, 71 L. Ed. 558; United States v. Klausner, 2 Cir., 25 F.2d 608. Corporate securities represent the most commonly used means through which a corporation secures funds for use in the operation of its business. Securities issued for that purpose evidence a direct obligation of the corporate body. Securities of this kind and character the Congress manifestly had in mind in the enactment of the provision of the broad statute now under consideration.

The securities issued and sold by the Bankers Mortgage Company, each representing an obligation, contained these elements. The amount thereof, the liability being contingent and depending on the number of payments received thereon, was the face value as and when all installments had been paid. However, from the beginning, the instrument had an actual value, based upon the initial installment paid before issuance, the value increasing with each succeeding payment. The company was initially bound to secure all such obligations by keeping securities therefor on deposit with the state. The instruments were registered when put into circulation, the state exercising supervision. Brollier v. Bankers' Mortgage Co., 137 Kan. 298, 20 P.2d 817. As registered obligations of the corporation, they had a conditional or contingent liability from the outset. Such liability, depending upon the number of payments made upon the instrument, did not take the instruments, as to such tax, outside the statute, not being excluded and no distinction being made between conditional and unconditional obliga-tions. Willcutts v. Investors' Syndicate, supra.

The trustee relies upon Goodyear Tire & Rubber Co. v. United States, supra, and Fidelity Investment Ass'n v. United States, Ct.Cl., 5 F.Supp. 19. The first case involves a tax on the transfer of shares of corporate stock. The court, in the opinion, pointed out that the tax was not on certificates of stock but upon the transfer of legal title of shares or certificates of stock. The decision in the latter case, decided by the Court of Claims, was based upon the conclusion that according to expert testimony, admissible to determine whether such instruments doubtful in characteristics and appearance were taxable, the securities there involved not being of the kind and character generally known as corporate securities. The trustee in the instant case submitted testimony of witnesses to the effect that they did not regard these obligations as corporate securities. Whether obligations are corporate securities within the meaning of the statute is a mixed question of fact and law, to be determined by the provisions in the instruments themselves, face and form of the certificate or bond, and the circumstances under which they were issued. When facts are thus ascertained, then it becomes a question of law as to whether they are corporate securities within the terms of the statute. The Court of Claims declared that the nature and character of an instrument, doubtful in characteristics and appearance, is a question of fact and approved the admission of expert testimony bearing thereon, but, where the instrument is plainly and patently on its face a secured indebtedness, oral evidence would be superfluous. These instruments are plainly and patently secured obligations, conditional and contingent in nature. Expert testimony as to how they are commonly denominated and regarded by those engaged in the purchase and sale of securities, being entirely superfluous, had no proper place for consideration in the trial below.

The obligations which the Bankers Mortgage Company issued and sold were corporate securities within the meaning of the act imposing the stamp tax upon their issuance. Willcutts v. Investors' Syndicate, supra, and Brollier v. Bankers Mortgage Co., supra.

The trustee argues that, if the obligations are taxable under the terms of the statute, the tax should be computed upon the amount paid upon such securities at the time

of their issuance. But the statute does not so provide. It provides in plain language that the tax shall be computed on the face value of such securities. For the purpose of taxation under the statute, the face value at maturity is the basis of computation. Willcutts v. Investors' Syndicate, supra.

The parties are agreed that, if the securities are subject to tax at their face value at maturity, the collector exacted the correct amount. For the reasons indicated, the judgment should be reversed and the cause remanded, with direction to dismiss the action.