## MORTGAGE GUARANTEE CO. v. WELCH, Collector of Internal Revenue.*

### No. 5819.

Circuit Court of Appeals, Ninth Circuit.

Feb. 10, 1930.

Claude I. Parker, Ralph W. Smith, and Ralph Kohlmeier, all of Los Angeles, Cal., for appellant.

Martin Conboy, of New York City, amicus Curiæ.

Samuel W. McNabb, U. S. Atty., and Harry Graham Balter, Asst. U. S. Atty., both of Los Angeles, Cal., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

WILBUR, Circuit Judge.

Appellant brought this action to recover money paid to the United States Collector of Internal Revenue for stamp taxes upon certain first mortgage participation certificates issued by the appellant. The demurrer to the complaint was sustained and judgment entered in favor of appellee. The sole question is whether or not such certificates are "corporate securities" and thus subject to stamp taxes under and by virtue of the provisions of 26 USCA § 901, schedule A, subdivision 1. The Revenue Acts of February 26, 1926, § 800, 44 Stat. 99, and Act of May 29, 1928, § 442 (a), 44 Stat. 867 (26 USCA

*Certiorari denied 50 S. Ct. 410, 74 L. Ed. —.

§ 901). That section provides for the levy and collection of a tax upon the "several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in Schedule A of this chapter." That description is as follows: "(1) Bonds, debentures, certificates of indebtedness, and other corporate securities. On all bonds, debentures, or certificates of indebtedness issued by any corporation, and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities, on each of $100 of face value or fraction thereof, 5 cents," etc.

It is claimed by the appellee that the certificates in question are instruments issued by a corporation in registered form, known generally as corporate securities. The complaint in the action sets out fully the nature and character of the instruments involved in the case. To do so requires nearly eighty pages of the transcript on appeal. We will not undertake to set out the facts thus alleged in great detail in this opinion. Suffice it to say that the appellant engaged in the business of loaning money on mortgages, thereafter placing those mortgages with the trust company upon a trust agreement and assignment by which the trust company takes the title to the mortgages and agrees to hold them for and on behalf of purchasers of the certificates in question to be thereafter issued and sold by the appellant to the public. The certificates thus issued purport to convey a pro rata interest in the securities in the hands of the trust company, but provide that all interest collected upon the mortgages over and above the interest rate of six per cent. specified in the certificate shall belong to the appellant. The appellant, in its agreement with the trust company, reserves the right to exchange securities from time to time as its interests may dictate, and the certificate in question guarantees the purchaser thereof the payment to him of the full amount of the face value of the certificate with the interest thereon therein specified. In addition to this guaranty in the certificate, the appellant also issues a policy of mortgage insurance insuring the collection of the mortgages in question. No question is raised as to the power of Congress to impose a tax upon such a certificate, and the only question is as to whether or not Congress intended so to do by the legislation here in question. A similar question relating to railroad equipment certificates issued by a trust company was presented to the Supreme Court of the United States in Lederer v. Fidelity Trust Co., 267 U. S. 17, 45 S. Ct. 206, 69 L. Ed. 494, which were there held to be taxable. Were it not for the fact that the appellant so earnestly contends that this decision is not applicable to the certificates here involved, we would feel that the citation of this case was a sufficient answer to the appellant's contentions as to the proper interpretation of the section 901, supra, in question. While the facts are quite different in that case, we can see no substantial difference in principle. It is argued by the appellant that the certificates issued by the appellant are an assignment of an interest in mortgage securities whose payment is assured by a mortgage insurance policy also issued by the appellant, and that neither are taxable. An assignment of mortgage is not taxable under rule 71 of the Internal Revenue Department. And it is argued upon grounds to be presently stated that such a policy is not taxable and therefore it is claimed the certificate in question is not subject to the tax.

The theory upon which it is claimed that a mortgage insurance policy is not taxable is that as 26 USCA § 901 was originally enacted [see Act Feb. 24, 1919, c. 18, § 1107, 40 Stat. 1135], it expressly provided in subdivision 2 of schedule A for a tax upon mortgage insurance policies. When it was last amended this provision was omitted. It is argued that the intentional omission of mortgage insurance policies in this subsequent legislation shows an intent on the part of Congress to relieve such policies from stamp tax. It is further also contended that the Legislature of California has in effect provided that such a certificate is a mortgage insurance policy. In this behalf section 453bb, paragraph 4, of the Civil Code of California, is cited. This paragraph reads as follows: "A policy of mortgage insurance which evidences the ownership by the insured of an undivided or other partial share or interest, or the right to participate to a specified extent, in a security, or in a group consisting of several securities, and purports to guarantee the payment of such securities, or the payment of such undivided or other partial share or interest therein, or the amount of such participation, may be referred to as, and is hereby designated, a 'mortgage participation certificate.'"

The argument is that inasmuch as Congress had exempted policies of mortgage insurance from taxation by omitting the same from section 800 (now 26 USCA section 901, supra), and inasmuch as the Legislature of California has authoritatively defined a mort-

gage participation certificate as a policy of mortgage insurance, no tax is authorized to be levied thereon by 26 USCA § 901. We will not undertake to follow the argument of counsel in its various ramifications because the question involved, although very important, is comparatively simple. Congress did not undertake to define with minute detail the character of instruments upon which the tax was to be levied, but after naming the usual forms of corporate securities, such as bonds, debentures, certificates of indebtedness, asserted its intention to tax all forms of corporate securities with interest coupons or in registered form. We postpone for a moment the consideration of the question as to the effect of the words "known generally" used in the statute in connection with the phrase "corporate securities." At the time of the enactment of this legislation the word "securities" was defined in Cyc. as "written assurances for the return or payment of money; evidence of indebtedness." 35 Cyc. 1283. See also definition of "security" in Webster's International Dictionary of 1913, subdivision 3: "An evidence of debt or of property, as a bond, stock certificate or other instrument, etc.; a document giving the holder the right to demand and receive property not in his possession. Securities are: personal, giving a claim against a particular person; on property, giving a lien or claim on property which may be specified, the security then being termed specific, or may be designated in a general way so that the identity of the property is subject to change, the security then being shifting or floating; and of various other kinds disclosed by their names, as corporation, trustee, or government securities, etc." Century Dictionary, subdivision 3: "An evidence of debt or of property, as a bond or a certificate of stock, as government securities." Standard Dictionary, subdivision 3: "Written promises or assurances for payment of money; evidence of debt, as government securities."

Without further citation of authority or of definition, it seems clear that the "certificates" involved in this action are "securities" within the meaning of that term as used in connection with the subject of investments, and that, being issued by a corporation, they are "corporate securities." Assuming, without deciding, that under the section in question ( 26 USCA § 901, supra) it is also essential that such corporate securities must be "generally known" as such in order to be subject to tax under existing law, it appears from the statutory definition of participation certificates hereinabove quoted (Civil Code Cal. § 453bb) that this is a form of investment security, or corporate obligation recognized by the law as in sufficiently general use to require statutory regulation as to the method of making the investment and arranging the security and dealing with the obligations. See also Civ. Code Cal. § 453ff.

It is alleged in the complaint that the appellant is doing business in this form of obligation or certificate, and that it has issued certificates aggregating over thirty-two millions of dollars. It is claimed in the argument by the appellant, and by amicus curiæ representing a large number of similar corporations, that this form of investment, although relatively recent, is very generally used throughout the country, and that therefore the question here involved is one of great importance. It would thus appear that these certificates are a generally known form of corporate security.

Without attempting to analyze the relative rights and duties and obligations of the appellant and of the trustee and of the holder of the certificates in question, we think it is clear that the certificates issued by the appellant were of the kind Congress intended to tax when it enacted 26 USCA § 901.

Judgment affirmed.