## LAWYERS' MORTG. CO. v. ANDERSON, Internal Revenue Collector.

District Court, S. D. New York.

Oct. 18, 1932.

Shearman & Sterling, of New York City (Harry W. Forbes, of New York City, of counsel), for plaintiff.

George Z. Medalie, U. S. Atty., of New York City (Frank Chambers, Asst. U. S. Atty., of New York City, and L. H. Baylies, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., of counsel), for defendant.

WOOLSEY, District Judge.

This motion is granted, and an order may be entered for judgment in favor of the plaintiff and against the defendant collector

in the sum of $53,661.15, with interest from April 15, 1930.

I. The stamp taxes sought to be recovered in this action were assessed against the plaintiff under title 8, § 800, Schedule A, paragraph 1, of the Revenue Acts of 1924 and 1926, 26 USCA § 901, Schedule A(1) and note.

Title 8 of the Revenue Act of 1924 dealt with stamp taxes, and provided that a stamp tax should be levied, collected, and paid on certain documents enumerated in Schedule A of said title.

In Schedule A, as among the objects of that stamp tax, there were listed in paragraph 1 thereof:

"Bonds of indebtedness: On all bonds, debentures, or certificates of indebtedness issued by any person, and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities, on each $100 of face value or fraction thereof, 5 cents:

"Provided, That every renewal of the foregoing shall be taxed as a new issue: Provided further, That when a bond conditioned for the repayment or payment of money is given in a penal sum greater than the debt secured, the tax shall be based upon the amount secured."

The sole change made in the provisions of this paragraph in the Revenue Act of 1926 was to change the words "issued by any person," in the early part of the paragraph to, "issued by any corporation," thus limiting the ambit of the tax to bonds for corporate indebtedness.

II. The form of the guaranteed first mortgage certificates here involved is shown in Exhibit A, and its reverse, Exhibit B annexed to the complaint, and Exhibit C annexed to the affidavit supporting the motion.

So far as here relevant, these guaranteed certificates, as typified by Exhibits A and B, recite the assignment by the plaintiff to its purchaser, referred to as "the assured," of an undivided interest in a specified bond and mortgage executed by some third party in favor of the plaintiff which it holds for the ratable benefit of those who may purchase the certificates, and it is also provided that the plaintiff as assignor guarantees payment of interest and principal within a certain period after due date or maturity, and that the plaintiff should be agent for the assignee in the collection of any amounts due.

The interest paid to the assignees of these certificates is one-half of one per cent. less than the rate fixed in the bond and mortgage in which a participation is assigned by the certificate. This difference constitutes in effect a premium for the plaintiff's guaranty above mentioned.

The form of the certificate represented by Exhibit A just summarized covers one bond and mortgage. The plaintiff also issued to a lesser extent a form of certificate represented by Exhibit C, annexed to the motion papers. This form differs from Exhibit A only in the fact that it represents an assignment of an undivided share in a group of several bonds and mortgages, which are listed on the back of the assignment, and which all have the same interest dates and the same dates of maturity.

Neither under certificates in the form shown as Exhibit A, or in the form shown in Exhibit C, does the plaintiff have the right to substitute other bonds and mortgages than those named in the certificate; those therein named are irrevocably dedicated to the participating certificate holders to whom shares in them are assigned.

█ It is implicit in the situation that the assignee of a certificate and his fellow assignees of participating shares in the bond and mortgage or bonds and mortgages assigned are the equitable owners of the securities given by the third party mortgagors.

█ The two forms of certificates above discussed are the only forms involved in this action. They are proved on this motion, and the only issue raised herein is whether or not they are taxable obligations of the plaintiff.

III. There is not any obligation, other than the guaranty, assumed by the plaintiff with regard to the indebtedness of the third party mortgagors on certificates in the forms before me.

It seems to be quite clear that, although the guaranty of the plaintiff would have been subject to stamp tax under the Revenue Act of 1917, title 8, Schedule A, paragraph 2 (40 Stat. 321), and the Revenue Act of 1918, title 11, Schedule A, paragraph 2 (40 Stat. 1135), guaranties as such have not been subject to stamp tax since the Revenue Act of 1921 (42 Stat. 227) went into effect.

IV. The legal relationship under the A form of certificate qua the indebtedness is direct between the third party mortgagor who is the obligor and the certificate holder and his fellows who as participants in the obligation are severally obligees. The only difference between the C form of certificate and

the A form of certificate is that in the latter there are a number of obligors and obligations instead of one.

In both forms of certificate the certificate holders are the owners of the mortgagor's obligations, at least in equity, and, assuming the case of a default by the mortgagors, they would lose their investment, if the plaintiff were unable to implement its guaranty.

I do not think, therefore, that these certificates can by any possibility be properly defined as corporate securities of the plaintiff.

That the certificates would be corporate securities of any mortgagor which was a corporation is beside the point, for such a situation would not make the plaintiff subject to stamp taxes on them. Indeed, it was not on any such basis that the tax complained of here was assessed against the plaintiff.

V. The plaintiff's principal business, as is shown by the recent decision of the Supreme Court in Bowers v. Lawyers' Mortgage Company, 285 U. S. 182, 188, 189, 52 S. Ct. 350, 76 L. Ed. 690, is, in effect, that of loaning, secured by bonds and mortgages on real estate, and the sale of such bonds and mortgages, in whole or in shares, to the investing public, to which such investments are made appetizing through the del credere element introduced therein by the plaintiff's guaranty.

This case is distinguishable from Lederer v. Fidelity Trust Co., 267 U. S. 17, 45 S. Ct. 206, 69 L. Ed. 494, and Willcuts v. Investors' Syndicate, 57 F.(2d) 811 (C. C. A. 8), for in those cases the tax was resisted by the primary obligor, and from Mortgage Guarantee Co. v. Welch, 38 F.(2d) 184 (C. C. A. 9), for that reason, and also for other reasons.

In the Welch Case, to mention an important difference, the mortgages were held by a trust company for the benefit of guaranteed certificate holders under an indenture which gave the Mortgage Guarantee Company a right to exchange securities as its interest might dictate, and hence the certificates were not in fact, whatever they were in form, assignments of an interest in specific mortgages, nor were the certificate holders equitable owners therein. Such certificates were the direct obligations of the Mortgage Guarantee Company, in respect of which it was secured to the extent it deemed advisable by a number of bonds and mortgages in the hands of the trust company.

Here the plaintiff's liability for the amount of the certificates is secondary only. Its certificates are not therefore bonds, debentures, or certificates of its indebtedness, nor are they its corporate securities. Indeed the plaintiff's entire relationship to each certificate holder is purely fiduciary, except in respect of its guarantee.

The certificates here in question are rather certificates of the indebtedness of, and hence securities of, other third party mortgagors, whether individual or corporate. Therefore they are not, in my opinion, subject to the stamp tax for the return of which this action is brought.

VI. As there are not any residual questions of fact involved here which need to be dealt with on a plenary trial, it follows the plaintiff is entitled to judgment for the amount claimed, $53,661.15, with interest from April 15, 1930, the date on which the said sum was paid to the defendant under protest.

Settle order for judgment on notice unless agreed.