**LAWYERS' MORTGAGE CO. v. ANDERSON,**
Collector of Internal Revenue.

No. 42.

Circuit Court of Appeals, Second Circuit.

Dec. 4, 1933.

George Z. Medalie, U. S. Atty., of New York City (Frank Chambers, Asst. U. S. Atty., of New York City, of counsel), for appellant.

Shearman & Sterling, of New York City (Harry W. Forbes, of New York City, of counsel), for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Appellee recovered moneys paid under protest as stamp taxes alleged to be due upon the issuance by it, during the period from February 16, 1926, to February 1, 1930, of guaranteed first mortgage certificates without placing thereon documentary stamps. Appellant made the assessment pursuant to section 800, Schedule A (1), title 8, of the Revenue Acts of 1924 and 1926 (26 U. S. C. § 901, 26 USCA § 901, Schedule A (1) and note), which provided for a stamp tax "On all bonds, debentures, or certificates of indebtedness issued by any corporation ['person' in the 1924 act], and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities, on each $100 of face value or fraction thereof, 5 cents. * * * " A summary judgment was granted below on a motion made therefor by the appellee.

The appellee, a corporation, is organized under the New York Insurance Law (Consol. Laws, c. 28). During the period in question, it owned various bonds secured by mortgages on real estate. It issued, in connection with

these bonds, two classes of first mortgage certificates.

The first class of certificates "assigned and transferred" to a designated assignee, termed by the certificate "the assured," a share or interest to the extent of a certain sum in a specified bond and mortgage. The appellee certified in this form of certificate that "it holds said bond and mortgage together with any guaranties of payment, insurance policies and other instruments and evidences of title relating thereto for the benefit of the assured." On the face of each certificate it appeared that it was one of a series of like tenor of an aggregate sum not in excess of the bond and mortgage, and that the certificates were all secured by the bond and mortgage. The certificate guarantees to the assured the payment of interest, at the rate of 5½ per cent. per annum, within five days after the due date of interest, under the terms of the bond and mortgage and the payment of the principal amount as and when collected, but, in any event, absolutely within eighteen months after payment shall be due and shall be demanded by the assured. By its terms the appellee was appointed irrevocable agent of the assured to collect or sue for interest and principal due under the bond and mortgage, to satisfy and discharge the mortgage in its own name on receiving full payment, to collect, sue for, receive, or compromise the fire insurance on the mortgaged property in case of loss by fire, to extend under such terms and conditions as it may see fit, the time of payment of installments of interest or principal due under the mortgage, to extend or waive any right, provision, or option contained in the bond and mortgage, and to take any action it may deem necessary to enforce any of the provisions of the bond and mortgage. By the certificate the appellee reserved the privilege, at its option, to take up the certificate at any time on giving thirty days' notice to the assured upon payment of the principal amount and interest.

The second class of certificates contained substantially the same provisions. It was issued upon a group of bonds and mortgages held by the appellee and assigned to the "assured" an undivided share to the extent of the sum stated in the bonds and mortgages specified. These bonds and mortgages have the same dates of maturity.

The physical form, size, and appearance of these first mortgage certificates with steel engraved colored border, printed in registered form with assignability by indorsement and registration on the books of the company, were such as is used generally for corporate securities. This has been held a matter of importance in cases of a documentary stamp tax. United States v. Isham, 17 Wall. 496, 21 L. Ed. 728; Goodyear Tire & Rubber Co. v. United States, 273 U. S. 100, 103, 47 S. Ct. 263, 71 L. Ed. 558; United States v. Klausner, 25 F.(2d) 608 (C. C. A. 2).

In Bowers v. Lawyers' Mortgage Co., 285 U. S. 182, 52 S. Ct. 350, 76 L. Ed. 690, the court dealt with the question of liability of this appellee for the capital stock tax imposed under the provisions of the Revenue Act of 1921 (section 1000, 42 Stat. 294); the issue there being whether the appellee was an insurance company under the terms of that act (section 246, 42 Stat. 262). It was said that the guaranty by the plaintiff constituted an insurance contract. But the insurance part of the business of the corporation was held to be incidental, and it was held not to be an insurance company and subject to the capital stock tax. But whether or not these certificates are instruments known generally as corporate securities is an entirely different question. There is the guaranty of the corporation obligating the appellee to pay or see that the holder is paid in any event which makes it a corporate security. Lederer v. Fidelity Trust Co., 267 U. S. 17, 45 S. Ct. 206, 69 L. Ed. 494. These first mortgage certificates are listed on the New York Real Estate Exchange, where other real estate securities, bonds, and stocks are listed. Under the New York Personal Property Law (Consol. Laws, c. 41) § 21, and the Decedent Estate Law (Consol. Laws, c. 13) § 111, they are proper and legal investments for the funds of trusts and estates.

The Circuit Court of Appeals for the Eighth Circuit, in construing this statute, said that it was the intention of Congress that it should be regarded broadly and comprehensively. Willcuts v. Investors' Syndicate (C. C. A.) 57 F.(2d) 811. In Lederer v. Fidelity Trust Co., supra, railroad equipment certificates were issued by a trust company as security for moneys advanced by a syndicate to purchase equipment leased by the trust company and the railroad company was under a contract for periodical payments as rentals with the ultimate acquisition of title by it. The certificates were payable with interest to bearer or registered holder from the rentals thus to be paid by the railroad company, and it was held that they were subject to a stamp tax under the provisions of the Act of February 24, 1919 (title 11, § 1100 and Schedule A, 40 Stat. 1133, 1135). They were classed

as instruments issued by a corporation known generally as corporate securities. The court said at page 22 of 267 U. S., 45 S. Ct. 206, 207:

"We do not regard the precise limits of the Trust Company's undertaking as important. If it were only to collect and pay money received by the Company under the secured contract of the Railroad it would be a security for money payment."

The appellee imposed upon itself an obligation to collect and pay the money under the secured contract—the bond—with the mortgagor, and the undertaking of the appellee was therefore, in the language of the Supreme Court, a security for money payment. The appellee promises to pay interest and principal in any case within the time specified in the certificate. In Mortgage Guarantee Co. v. Welch, 38 F.(2d) 184 (C. C. A. 9), the stamp tax there considered involved the provisions of the Revenue Act of 1926 (26 U. S. C. § 901, 26 USCA § 901), and the question at issue was whether certain first mortgage participation certificates issued by the plaintiff were corporate securities. It was held they were. It appeared that the corporation loaned money upon notes secured by mortgages on real estate and that it transferred groups of these notes and mortgages to a trust company which, under the terms of the written agreement, held them for the benefit of the persons to whom the taxpayer corporation sold undivided shares in them. The notes and mortgages were guaranteed to the purchaser as to payment of interest and principal. The instruments used to make transfers of interests were called first mortgage certificates. The substance of those certificates was substantially the same as that in the guaranteed first mortgage certificates at bar, and the only difference was that the bonds and mortgages were held by a depositary instead of the corporation issuing the participating certificates, as here, and the corporation issuing the certificates had the power to substitute other bonds and mortgages for those originally placed with the depositary. But these differences do not change the character of the instrument issued by the appellee. The test is whether the certificates issued at bar are generally known as corporate securities. The internal transactions of the company are not so important. In the Mortgage Guaranty Co. Case and the instant case, the purchaser of the certificate relied upon the stability of the issuing company, and the public generally would not have a different view of the two

types of certificates in determining whether they were or were not corporate securities.

It is contended that the repeal of subdivision 2 of Schedule A of title 11 of the Revenue Act of 1918, 40 Stat. 1135, by section 1400 (a) of the Revenue Act of 1921, 42 Stat. 321, without re-enactment indicates that Congress did not intend to tax such instruments as those issued by appellee as "corporate securities." It is argued that mortgage certificates were taxable under subdivision 2 of Schedule A,[1] and that it could not have been the intention to tax them under subdivision 1 also as "corporate securities." A similar contention was made and answered in Mortgage Guarantee Co. v. Welch, 38 F.(2d) 184 (C. C. A. 9). Moreover, the repealed provision of the 1918 act dealt with the stamp tax upon "Bonds, indemnity and surety," and the intent of that subdivision was clearly to tax surety and indemnity bonds in whatever form they might be issued. Surety and indemnity bonds are not sold for investment purposes, and Congress, recognizing this, had in mind that subdivision taxing the issuance of policies rather than of securities. The guaranteed first mortgage certificates here involved are in an entirely different form and are different obligations. The repealed provision covered only bonds and obligations or policies of insurance as such. It applied to those instruments whose purpose was to guarantee the obligation of others and whose penalty matured only in the event of the breach of such obligation, but not to documents of in-

---

[1] "Schedule A.—Stamp Taxes.

"1. Bonds of indebtedness: On all bonds, debentures, or certificates of indebtedness issued by any person, and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities, on each $100 of face value or fraction thereof, 5 cents: Provided, That every renewal of the foregoing shall be taxed as a new issue: Provided further, That when a bond conditioned for the repayment or payment of money is given in a penal sum greater than the debt secured, the tax shall be based upon the amount secured.

"2. Bonds, indemnity and surety: On all bonds executed for indemnifying any person who shall have become bound or engaged as surety, and on all bonds executed for the due execution or performance of any contract, obligation, or requirement, or the duties of any office or position, and to account for money received by virtue thereof, and on all policies of guaranty and fidelity insurance, including policies guaranteeing titles to real estate and mortgage guarantee policies, and on all other bonds of any description, made, issued, or executed, not otherwise provided for in this schedule, except such as may be required in legal proceedings, 50 cents: Provided, That where a premium is charged for the issuance, renewal or continuance of such bond the tax shall be 1 cent on each dollar or fractional part thereof of the premium charged: Provided further, That policies of reinsurance shall be exempt from the tax imposed by this subdivision."

dependent value which passed currently as corporate securities at their face or market value.

The genesis of this legislation may be found in the Revenue Act of 1898 (30 Stat. 448), where bonds, debentures, or certificates of indebtedness by any association, company, or corporation were taxed on each $100 of face value or fraction thereof, 5 cents, and bonds of indemnity and surety were taxed 50 cents. These provisions were re-enacted in the Revenue Act of 1914 (38 Stat. 745). See the reports of the Ways and Means and Finance Committees (House Rep. 1163, 63d Congress, 2d Session, p. 7, and Senate Reports 813, 63d Congress, 2d Session, p. 9). A Revenue Act imposing a stamp tax was passed on October 3, 1917 (40 Stat. 300). It enlarged the scope of the provisions of the former acts relating to bonds of indemnity and surety by substituting for the guaranty of "the payment of any sum of money" a guaranty for due execution and performance of "any contract, obligation, or requirement."

The Revenue Act of 1918 (40 Stat. 1057, 1135) added a clause to the provisions for certificates of indebtedness to cover "all instruments, however termed, issued by any corporation with interest coupons or in registered form," and then classified instruments referred to as those "known generally as corporate securities." The provision for bonds of indemnity and surety was made applicable to policies of guaranty, including those guaranteeing mortgages, by adding the clause, "and on all policies of guaranty and fidelity insurance, including policies guaranteeing titles to real estate and mortgage guarantee policies." See the report of the Ways and Means Committee (House Report 767, 65th Congress, 2d Session, p. 117).

The Revenue Act of 1921 (42 Stat. 227, 303) re-enacted verbatim the provisions of the 1918 act relating to bonds of indebtedness, but omitted entirely the provisions of the Revenue Act of 1918 relating to bonds of indemnity and policies of guaranty. The Finance Committee pointed out the reason therefor (Senate Rep. No. 275, 67th Congress, 1st Session, p. 30; House Reports 486, 67th Congress, 1st Session, p. 55). And thus there was a repeal of the entire tax upon these instruments to which the conferees agreed, including policies of guaranty and indemnity and surety bonds. The repeal is not because there was a conflict between the classes enumerated therein and those enumerated in the subdivision relating to instruments of indebtedness, but because of disagreement between the House and the Senate as to the method of imposing a tax upon the bonds and policies of indemnity.

The 1924 and 1926 acts continue the provision for bonds of indebtedness and plainly specify the instruments which are subject to the stamp tax. The instruments here in question, we think, are corporate securities, known generally as such, and were taxable under the statute.

Decree reversed.