ESTATE OF ELIOT W. MITCHELL, DECEASED, MANUFACTURERS & TRADERS TRUST COMPANY AND ALICE FRANK MITCHELL, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 76401. Promulgated January 21, 1938.

*William C. Warren, Jr., Esq.*, for the petitioners.
*E. A. Tonjes, Esq.*, for the respondent.

OPINION.

MELLOTT: The petition alleges that the respondent erred in disallowing the claimed deductions. It is alleged, apparently in conformity with Rule 5 (e) of the Board's rules of practice which requires "clear and concise numbered statements of the facts upon which the petitioner relies", that "Eliot W. Mitchell, during said calendar year 1931, sold certain securities on which he sustained a loss in the total amount of $44,634.64." The evidence fails to support such allegation; but inasmuch as both parties at the hearing construed the issue to be whether or not valid sales of the stock had been made by decedent and his wife, we have done likewise in making our findings and shall discuss briefly the principles of law deemed pertinent to such issue. Cf. *Frank B. Gummey*, 26 B. T. A. 894.

It has been said many times that transactions between a husband and wife, or members of a family, are to be subjected to the closest scrutiny, *Frederick H. Hoffmann*, 3 B. T. A. 964; *James L. Robertson*, 20 B. T. A. 112; *Slayton v. Commissioner*, 76 Fed. (2d) 497; *John E. Zimmerman*, 36 B. T. A. 279; and, where the transaction is made "for the avowed purpose of reducing taxation and apparently would not have been consummated otherwise at this time, every requirement of a sale must be met." *Mrs. Niels (Mellie) Esperson, Executrix*, 13 B. T. A. 596, 609; affd., 49 Fed. (2d) 259. Taxation is an eminently practical matter and tax laws deal with realities. *Helvering v. Security Savings Commercial Bank*, 72 Fed. (2d) 874. "A man can not make a sale to himself", *Mrs. Niels (Mellie) Esperson, Executrix, supra*, nor is an actual loss sustained "unless when the transaction is concluded the taxpayer is poorer to the extent of the loss claimed." *Shoenberg v. Commissioner*, 77 Fed. (2d) 546; certiorari denied, 296 U. S. 586.

Upon brief petitioners say, "For a long time it has been well established that a sale may be made for the sole and express purpose of decreasing tax liability." The statement is correct. *United States v. Isham*, 17 Wall. 496; *Gregory v. Helvering*, 293 U. S. 465; *Nace Realty Co.*, 28 B. T. A. 467. It is also true, as petitioners point out upon brief, that where husband or wife, in good faith, actually makes a sale of stock to the other spouse, the gain or loss will be recognized for tax purposes. *Benjamin T. Burton*, 28 B. T. A. 1242; *Carl P. Dennett*, 30 B. T. A. 49; *Joseph E. Uihlein*, 30 B. T. A. 399; affd., *Commissioner v. Brumder*, 82 Fed. (2d) 944; *Charles F. Fawsett*, 31 B. T. A. 139; *Frank M. Arguimbau*, 31 B. T. A. 604; *Thomas W. Behan*, 32 B. T. A. 1088; affd., *Commissioner v. Behan*, 90 Fed. (2d) 609; and *F. Stanley Porter*, 36 B. T. A. 475; and this is true, where an actual sale is made through a broker even though a portion of

the funds used in making the purchase were, as a matter of convenience, furnished to the purchaser by the one making the sale. In such a case, however, it is necessary that it be shown that "each was financially able to buy and pay for all purchases made", and the furnishing of the funds was a mere convenience and not a necessity without which such purchases could not have been made. *John E. Zimmerman, supra; Thomas W. Behan, supra; F. Stanley Porter, supra;* and *George Mackubin,* 36 B. T. A. 255.

In the instant proceeding it can not be found as a fact that the furnishing of the funds by the decedent to the wife was a "mere convenience and not a necessity." The wife, testifying as a witness, was asked whether she had any other securities or property. She responded "Aside from that found in the box?" Her counsel then said, "Aside from what was shown in the box. I am just asking whether you had", to which she replied, "No." When asked about the deposit by the husband of $19,000 in the joint bank account and whether she "needed about nineteen thousand to make up this check of $20,657.15", she replied "Yes." This testimony, together with other evidence in the record, might not be sufficient to justify us in concluding that the furnishing of the funds was a necessity without which the purchase could not have been made, but, in the face of it, we are not justified in finding that it was *not* such a necessity—a finding which must be made if petitioner is to prevail. Our conclusion, however, rests upon other facts and circumstances, in addition to the furnishing of the funds, so we pass this phase of the case without further discussion.

This proceeding, upon its facts, is quite similar to, and requires the application of the rule enunciated and applied by the Board in *George E. Morse,* 34 B. T. A. 943. Here, as in that case, the transactions were carried out solely on the order of the husband. The obvious object of all of them was, not to make sales of securities in the normal way, but to establish losses for tax purposes. The decedent and his wife during both years, merely shifted the legal title to the stocks but apparently never intended to divest the husband of his equitable title to them. Though they went through the form of making sales, the decedent never relinquished dominion and control over the securities; they were kept in his safety deposit box and were never even seen by the wife. He decided which should be shifted from his account with the broker to his wife's account with the same broker. When it suited him to do so he caused the same property to be shifted back again. If funds were needed for such purpose he furnished them. She "knew very little about" stock transactions and was satisfied to let him take care of all the details. She, as she expressed it, relied upon him "Entirely." "My husband

gave the order. He handled all that business." He wrote the letter instructing the broker to sell the stock standing in her name and all that she did was to sign it. Someone other than the wife prepared the check to the brokers for her signature, for it is obvious from an examination of the check that the handwriting of the body of the check and the signature are different. When she was asked whether "the proposition of buying this stock and selling it" was ever discussed between her and her husband she replied "Well, yes; he would advise me doing it." To the next question, "He advised you to buy it?" she responded, "Because I knew very little about it." When asked whether she had ever had them in her possession she said, "No, my husband had a safe deposit box and they were kept in there." "I really left that up to him to take them and put them where they belonged. I knew nothing about it. I always, when buying and selling, took his advice and let him handle it."

It is unnecessary to extend this discussion. The evidence is not sufficient to convince us that the decedent relinquished dominion and control over the securities sufficiently to establish a loss within the purview of section 23 (e) of the revenue act. In addition and in conclusion, the language used by this Board in *George E. Morse, supra*, may well be repeated.

* * * Not only did the husband fail to part with dominion and control over the shares, but even if we were to hold that he sold the shares, he would not be entitled to the deduction, because the account in the name of his wife was in reality his own account. Therefore, he would be held to have purchased substantially identical property within thirty days of the date of the sale, and, under the wash sales provision of the statute, he would not be entitled to a deduction in any event. Sec. 118, Revenue Act of 1928.

The respondent did not err in determining the deficiency.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

LEECH and DISNEY concur only in the result.

SMITH dissents.